[No. A053694. First Dist., Div. Two. Jan 27, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM ERIK MONROE, Defendant and Appellant.

COUNSEL

Marvin Kayne, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Laurence K. Sullivan and Ann K. Jensen, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

BENSON, J.—Defendant William Erik Monroe was the passenger in a car driven by another when he was arrested for possessing an open container of alcohol in a vehicle. When he was unable to produce "for examination" either a driver's license or "other satisfactory evidence of his identity," (Veh.

Code, § 40302, subd. (a)), the arresting officer took him into custody.[1] A search of his person turned up rock cocaine, and he was charged with and convicted of possession of cocaine base for sale. (Health & Saf. Code, § 11351.5.) In this appeal, he argues the trial court erred by denying his motion to suppress the cocaine. His principal attack is on the officer's decision to take him into custody. He argues that either the statute required the officer to give him an adequate opportunity to provide "other" evidence of his identity, or that the statute is unconstitutionally vague if read to allow the officer to take him into custody under the circumstances of this case. We disagree. We find the statute implicitly grants an officer discretion to determine what "other" evidence of identity is sufficient when a traffic citee is unable to produce a driver's license or other documentary evidence of equivalent reliability. We affirm.

### Facts and Procedural History

We derive the facts from the hearing on the motion to suppress. In our summary, we present the evidence in the light most favorable to the ruling below. (See, e.g., *People* v. *Leyba* (1981) 29 Cal.3d 591, 596-598 [174 Cal.Rptr. 867, 629 P.2d 961].)

In the early afternoon of December 28, 1990, uniformed Oakland Police Officers Kevin Johnson and Mike Brown were on patrol in an unmarked car which was equipped with red lights and a siren. The officers were on the alert for a homicide suspect who was believed to be in the area. As they passed a blue 1990 Chevrolet on the right, Officer Johnson saw defendant Monroe, who was the passenger in the Chevrolet. Officer Johnson had stopped the homicide suspect before, and had reviewed booking photographs of the suspect before going on shift. Officer Johnson had only seen Monroe in profile, but Monroe's appearance matched that of the suspect in several respects, and the area the officers were in was one of the suspect's usual haunts. In an attempt to confirm his suspicion, Officer Johnson pulled up next to the Chevrolet at a red light, but Monroe turned away from him and remained in that position until the light changed. Officers Johnson and Brown continued to follow the Chevrolet while they ran a registration check. The check revealed the car was a rental from Ohio. Because the homicide

---

[1] Unless otherwise indicated, all further statutory references are to the Vehicle Code.

Section 40302 provides in part: "Whenever any person is arrested for any violation of this code, not declared to be a felony, the arrested person shall be taken without unnecessary delay before a magistrate within the county in which the offense charged is alleged to have been committed and who has jurisdiction of the offense and is nearest or most accessible with reference to the place where the arrest is made in any of the following cases: [¶] (a) When the person arrested fails to present his driver's license or other satisfactory evidence of his identity for examination."

suspect had reportedly recently been in Ohio, Officer Johnson decided at that point to stop the Chevrolet. When the officers turned on the red lights and siren, Officer Brown saw Monroe move as though reaching to the floorboard of the car.

After the Chevrolet stopped, Officer Johnson walked up on the driver's side and looked into car. When he saw Monroe's face, he realized Monroe was not the suspect they were looking for. However, as Officer Johnson approached the car, he had also seen an open and half-empty bottle of beer on the floorboard of the driver's side of the car, and a cup in front of Monroe on the passenger's side floorboard. Officer Brown, who had walked up on the passenger's side of the car, saw a large cup of beer on the floorboards, and smelled beer through the open window. Like Officer Johnson, Officer Brown saw within a few seconds that Monroe was not the homicide suspect they were looking for. However, because Officer Brown suspected alcohol violations, he asked Monroe to get out of the car, and asked him for identification. Officer Brown gave varying accounts of Monroe's response. He testified several times that Monroe said he had no identification "with him," and also that Monroe simply stated he did "not have any I.D." Following the exchange between them, Officer Brown decided to take Monroe into custody under the authority of section 40302, subdivision (a). Subsequent searches of Monroe's person turned up the contraband which was to be the basis of the conviction we review here. While in custody at the scene of the stop, Monroe told the officers he was a parolee, and gave the addresses of his mother and girlfriend. A computer check by the officers confirmed there was a parolee whose name and date of birth matched those given by Monroe.

Monroe filed a written motion to suppress on the general ground that the search was illegal. After the hearing on the motion, Monroe filed papers in which he argued that Officer Brown's decision to take him into custody was not authorized by section 40302 because Officer Brown had not made any adequate attempt to identify him. In those papers, Monroe noted he had not had the benefit of a transcript of the evidentiary hearing on the motion, and reserved the issues of the propriety of the initial stop and decision to cite Monroe for Vehicle Code alcohol violations. At argument, Monroe added claims that the officers lacked a reasonable suspicion sufficient to justify the traffic stop, and that their decision to cite for the open container violation was a pretext for a search of the car. The motion was denied, Monroe was tried and convicted, and this appeal followed.

## DISCUSSION

The principal question raised in this appeal is the proper application and constitutional validity of section 40302, subdivision (a), which makes custodial arrest of a traffic violator mandatory if the violator cannot produce

either a driver's license or other satisfactory evidence of his or her identity. Appellant was taken into custody and searched when he told the arresting officer he did not have any identification on his person.[2] We will conclude the officer's decision to take appellant into custody was a proper exercise of the discretion necessarily granted by section 40302 in those cases in which a person arrested for a minor Vehicle Code violation is unable to produce a driver's license or its functional equivalent.

## A.

### Statutory Scheme

In *People* v. *Superior Court (Simon)* (1972) 7 Cal.3d 186, 199 [101 Cal.Rptr. 837, 496 P.2d 1205] (hereafter *Simon*), our Supreme Court explained the "procedure to be followed after a warrantless arrest for a Vehicle Code violation." (*Id.,* at p. 199.) Though there have been amendments and additions to the Vehicle Code in the years since *Simon* was decided, it remains a concise and accurate summary of the law. "If [the Vehicle Code] violation is declared to be a felony, the arrestee is to be dealt with according to the general provisions of the Penal Code on felony arrests. (Veh. Code, § 40301.) For all other cases, however, the Legislature has created a special tripartite scheme which reflects the lesser degree of criminality attached to the act of transgressing against ordinary traffic rules and regulations. [¶] First, the scheme in effect presumes that in the vast majority of cases the violator will not be taken into custody: with the exception of the instances next discussed, the officer must prepare a written notice to appear (i.e., a citation or 'ticket'), and must release the violator 'forthwith' when the latter in turn gives his written promise that he will appear as directed (§§ 40500, 40504). Indeed, such a violator may avoid the necessity for appearing in court: he may choose to deposit the prescribed bail by mail (§ 40510) and, by failing thereafter to appear, forfeit that amount in lieu of fine (§ 40512). [¶] Second, in certain cases, section 40303 gives the officer the option either to follow the foregoing procedure or to take the violator 'without unnecessary delay' before the 'nearest or most accessible' magistrate having jurisdiction over the offense. The section lists a number of more serious

---

[2]As noted, Officer Brown gave several versions of his conversation with Monroe. Whether read to include the words "with me" or not, Monroe's statement to Officer Brown made it clear he could not produce any written evidence of his identity. Under our reading of section 40302, that inability left Officer Brown with discretion to either continue to question Monroe, or to take him into custody. Because our conclusion would remain the same no matter which version of Officer Brown's testimony was believed, we need not and do not attempt to resolve the conflicts in his testimony on the point, if any exist.

violations as grounds for invoking this option, such as reckless driving, failure to stop after a accident, participating in speed contests, driving with an invalid license, attempt to evade arrest, and refusal to submit to safety inspections. [¶] Third, section 40302 makes it mandatory for the officer to follow the latter branch of the section 40303 option—i.e., to take the violator before a magistrate without unnecessary delay—in four specific instances: i.e., when the violator (a) fails to present his driver's license or other satisfactory evidence of his identity, (b) refuses to give his written promise to appear, or (c) demands an immediate appearance before a magistrate, or (d) when the violator is charged with the very serious traffic offenses [defined by former section 23102, driving under the influence of alcohol or other intoxicants]." (*Simon, supra,* 7 Cal.3d at pp. 199-200.)

In addition to the situations described in *Simon,* it is worth noting that an officer has the option of bringing a nonfelony traffic violator before a magistrate in several other situations; (1) where the motorist has been involved in a traffic accident or is obstructing traffic, and the officer has reason to believe the motorist was driving under the influence of liquor or drugs (§ 40300.5), (2) where an officer of the California Highway Patrol has arrested a person for violating a vehicular provision of state law not found in the Vehicle Code (§ 40304), or (3) where the officer has arrested a nonresident of this state and that nonresident cannot furnish "satisfactory evidence of identity and an address within this State at which he can be located." (§ 40305).

As the foregoing implies, an arrest for a minor Vehicle Code violation is to be distinguished in some respects from arrest under other circumstances. Ordinarily, the word "arrest" implies a sequence of events that begins with physical custody and at least a minimal body search, and concludes with booking and incarceration or release on bail. However, where a minor Vehicle Code violation is involved, the arrest is complete when, after an investigatory stop, "the officer determines there is probable cause to believe that an offense has been committed and begins the process of citing the violator to appear in court." (*Simon, supra,* 7 Cal.3d at p. 200.) This species of arrest does not inevitably result in physical custody and its concomitant, a search. (Cf. *Gustafson* v. *Florida* (1973) 414 U.S. 260, 266 [38 L.Ed.2d 456, 461-462, 94 S.Ct. 488] [search incident to arrest valid where officer takes traffic citee into custody following arrest]; *People* v. *Wohlleben* (1968) 261 Cal.App.2d 461, 463 [67 Cal.Rptr. 826] [minor traffic violation not a basis for custodial arrest]; see also *U.S.* v. *Guzman* (10th Cir. 1988) 864 F.2d

1512, 1519 [auto stop a limited seizure akin to investigative detention].)[3] It is only after the traffic arrest is made that the provisions which forbid, allow, or mandate the officer to bring the arrestee before a magistrate come into play.

 Here, there was probable cause to believe appellant had violated section 23223, which prohibits possession of an open container of any alcoholic beverage while in a car.[4] If appellant had been able to produce a driver's license in response to Officer Brown's request for identification, Officer Brown would have been required to cite appellant for that violation, and to release him on his written promise to appear. (§ 40500; Pen. Code, § 853.5; *Simon, supra,* 7 Cal.3d at p. 199.) However, when appellant told Officer Brown he did not have any identification with him, Officer Brown decided to take appellant into custody under the identification provision of section 40302, subdivision (a). Appellant claims he should have been given an opportunity to provide Officer Brown with "other satisfactory evidence of his identity" for Officer Brown's "examination," (§ 40302, subd. (a)), and because he was not, the ensuing custody and search were constitutionally unreasonable. We disagree. We find the language of the statute necessarily confers discretion on the officer to determine what "satisfactory evidence" of identity may be under the circumstances, including the discretion to determine that only reliable, written evidence will do, or on the other hand, that the violator's oral statements of identity and promise to appear are sufficiently reliable to allow citation and release despite the lack of written evidence.

---

[3]Because we conclude Officer Brown's decision to take appellant into custody was proper, we do not reach the question whether a search of his person would have been lawful absent full custody.

[4]We reject appellant's contention the arrest was unlawful because he had not violated section 23223. Appellant relies on *People* v. *Squadere* (1978) 88 Cal.App.3d Supp. 1. [151 Cal.Rptr. 616] *Squadere* held conviction under section 23223 was improper where the only evidence against the defendant was the presence of open containers under the seats of the car, without any evidence establishing the defendant knew the containers were there. (88 Cal.App.3d at pp. Supp. 3-4.) Appellant's reliance on *Squadere* is misplaced. First, the inquiry whether probable cause exists is not the same as that undertaken by an appellate court reviewing a judgment for support by substantial evidence. Second, *Squadere* is factually distinguishable; in *Squadere*, the open containers were under the seat, while here, the container was on the floor in front of appellant. Finally, *Squadere* itself points out that personal possession of the container may be proved by circumstantial evidence. (*Id.* at p. Supp. 4, fn. 2.) The presence of the container at appellant's feet was enough to ground a reasonable belief he personally possessed it. (Cf. *People* v. *Williams* (1971) 5 Cal.3d 211, 215 [95 Cal.Rptr. 530, 485 P.2d 1146] [possession proven where officer saw contraband on floor of car as defendant got out].) We conclude Officer Brown had probable cause to arrest for violation of section 23223.

## B.

### Construction of Section 40302

Though courts have considered the application of section 40302 in a variety of contexts, there has been no definitive interpretation of the phrase "satisfactory evidence of his identity," nor any explanation of the procedure to be followed by an officer who seeks to obtain such evidence. In those few cases which have directly considered whether some specific means of identification should have been enough to avoid custodial arrest, the courts have been content to conclude that the means of identification in question was not satisfactory. (See, e.g., *People* v. *Grant* (1990) 217 Cal.App.3d 1451, 1455 [266 Cal.Rptr. 587] [oral statements]; *People* v. *Farley* (1971) 20 Cal.App.3d 1032, 1036, fn. 2 [98 Cal.Rptr. 89] [Social Security card not satisfactory]; *People* v. *Mercurio* (1970) 10 Cal.App.3d 426, 430 [88 Cal.Rptr. 750] [no identification]; *People* v. *Anderson* (1968) 266 Cal.App.2d 125, 128 [71 Cal.Rptr. 827] [oral statement and nearby address].) ▇▇ ▆ ▆ The parties have cited no authority and we have found none which clearly articulates the standard an officer should apply when a citee[5] has no driver's license, other than general conclusory statements that the evidence of identity must be reliable and credible. (See, e.g., *People* v. *Mercurio, supra*, 10 Cal.App.3d at p. 430 ["reliable identification"]; *People* v. *Nagel* (1971) 17 Cal.App.3d 492, 494 [95 Cal.Rptr. 129] ["valid identification"]; *People* v. *Dukes* (1969) 1 Cal.App.3d 913, 916 [82 Cal.Rptr. 218] [defendant presented "unsatisfactory identification"]; *People* v. *Salinas* (1980) 111 Cal.App.3d Supp. 27, 29 [169 Cal.Rptr. 16] [duty to present "suitable identification"].) By the same token, none of the cases have considered what procedure the officer might use to elicit "satisfactory" evidence of identity, or whether any such procedure is required, nor does the statute itself shed any light on that aspect of the problem. In short, we are left with a question of statutory interpretation, i.e., what procedure the Legislature intended when it provided that an officer must take a citee before a magistrate unless the citee can provide "satisfactory evidence of his identity for examination."[6]

▇ In the interpretation of statutes, we look first to the words of the statute itself, giving them their usual and ordinary meanings, and according

---

[5]As we have noted, a Vehicle Code violator is technically under arrest when an officer has probable cause to believe that person has committed a Vehicle Code offense, and begins the process of issuing a citation to appear in court. (*Simon, supra*, 7 Cal.3d at p. 200.) For convenience and clarity, we refer to such a violator as a "citee." Our use of the term assumes the decision to issue the citation is legally correct.

[6]There is little if any legislative history which sheds light on the subject. The present statutory language was first added to the arrest provision of the predecessor to the Vehicle Code in 1925, and has been carried through without comment in substantially the same form to the present day. The relevant portion of the 1925 enactment was as follows: "Whenever any person is arrested for any violation of the provisions of this act [the California vehicle act of 1923, see Stats. 1923, ch. 266] . . . the arresting officer shall, upon production but without

significance to every word and phrase, if possible. (See, e.g., *Walnut Creek Manor* v. *Fair Employment & Housing Com.* (1991) 54 Cal.3d 245, 268 [284 Cal.Rptr. 718, 814 P.2d 704].) ■ The words should be construed in context, and should be given such "interpretation as will promote rather than defeat the *general purpose and policy* of the law." (*Alford* v. *Pierno* (1972) 27 Cal.App.3d 682, 688 [104 Cal.Rptr. 110] [original italics].) Where uncertainty exists, consideration should be given to the consequences that will flow from a particular interpretation; the result of the interpretation should be reasonable, and where several constructions are possible, that which leads to the more reasonable result should be adopted. (*Ibid.*; and see e.g., *Regents of University of California* v. *Superior Court* (1970) 3 Cal.3d 529, 536-537 [91 Cal.Rptr. 57, 476 P.2d 457].) With these principles in mind, we turn to the statute.

Section 40302 is a part of chapter 2 of division 17 of the Vehicle Code. Chapter 2 provides the procedures to be followed by peace officers making arrests for Vehicle Code violations committed in their presence. (§ 40300; see, e.g., *People* v. *Wohlleben, supra,* 261 Cal.App.2d at p. 463 [procedure for warrantless misdemeanor arrest for Vehicle Code violation is provided in Vehicle Code, not Penal Code].) Section 40302 is one of several sections of chapter 2 which specify the various circumstances under which an officer either has the option to take a citee before a magistrate, or is required to do so. As noted in *Simon, supra,* 7 Cal.3d at page 199, "the scheme in effect presumes that in the vast majority of cases the violator will not be taken into custody." This is in accord with the general policy of avoiding custodial arrest in most instances involving minor criminal violations, especially traffic violations.[7] (See, e.g., 2 ABA Standards for Criminal Justice, stds. 10-2.1, 10-2.2, *supra,* [policy in favor of citations]; Problems in the Admin. of Justice in Cal., Rep. to Assem. Com. on the Judiciary (1969) Supp. to Appen. to Assem. J. (1969 Reg. Sess.).) It would be inappropriate and harmful to both citizens and the criminal justice system if the presumption were custody, rather than release. For that reason, citation and release has been the standard for most Vehicle Code violations since 1925. (See Stats. 1925, ch. 240, § 19, p. 415; and see Nida, Cal. Motor Vehicle Legislation; West's Ann. Cal. Veh. Code, §§ 1-15999 (1971) pp. LXXVI-LXXXI; First National Conference on Street and Highway Safety, Rep. of Com. on Enforcement (Feb. 1, 1926) p. 14 [lesser traffic offenders should be cited

---

surrender of the operator's or chauffeur's license of the person arrested, *or other satisfactory evidence of the latter's identity*, take the name and address of such person and the number of his motor vehicle and notify [him to appear]." (Stats. 1925, ch. 240, § 19, p. 415, italics added.)

[7]For example, in 1971, approximately half of all misdemeanor arrestees in California were cited and released. (2 ABA Standards for Criminal Justice, std. 10-2.1 (2d ed. 1980) p. 10.23.) Presumably, the figure for Vehicle Code infractions is much higher.

and released, to "relieve the offender from the humiliation of being classed as a criminal and to prevent congestion in the police courts"].) Thus, the overall purpose of the scheme of which section 40302 is a part is to facilitate the immediate release of most violators, reserving custody[8] only for those who have either committed more serious offenses, or as in the case of persons who cannot produce satisfactory proof of identity, those whom the Legislature has deemed unlikely to fulfill a promise to appear. (*Simon, supra,* 7 Cal.3d at pp. 199-200.) .

 █ Given that the general purpose of the Vehicle Code arrest statutes is to avoid custodial arrest of most violators, reserving custody for serious offenders and those who are unlikely to comply with the citation procedure, it is clear the "satisfactory evidence" of identity standard must be interpreted to give the officer in the field sufficient flexibility to carry out that purpose in a variety of situations. (See 2 ABA Standards, *supra,* com. foll. std. 10-2.2 at p. 10.28 ["satisfactory evidence" portion of model citation statute purposefully left vague to preserve flexibility].) The variety of circumstances which might face an officer in the field defy classification. For example, there are undoubtedly situations in which an officer might conclude that a verified or verifiable oral statement of identity is reliable, and others in which the same statement would not seem reliable, as where the citee is evasive and there are minor but significant discrepancies in the statement of identity. For example, where two or more passengers in an automobile independently verify each other's identity, the officer's determination whether that independent verification is "satisfactory" must turn on that officer's perception of the credibility of the statements. In turn, that assessment may depend on the evaluation of such intangibles as the manner of the speakers, the place and time, or statements made by the passengers which tend to support or undercut the plausibility of their identifications. (See, e.g., *People* v. *Grant, supra,* 217 Cal.App.3d 1451, 1456 [officer's inquiries reasonable where motorists had no written identification and driver told officer car belonged to his aunt].) To accommodate the variety of situations which an officer in the field may encounter, any reasonable interpretation of the statute must at some point necessarily reserve the judgment whether particular evidence of identity is satisfactory to the officer. (See *Simon, supra,* 7 Cal.3d at p. 201 [citee "must be able to convince the officer—either by exhibiting his driver's license or by 'other satisfactory evidence'—that the name he is signing on the written promise to appear corresponds to his

---

[8]In most cases, the custody is only that incident to the trip to the magistrate, as in this case. (§§ 40306, 40307.) After that appearance, the violator must be released on bail or on his or her own recognizance, and if the appearance is impossible due to the unavailability of a magistrate or equivalent, the violator must be released after two hours. (*Ibid.*) To the extent the dissent may be read to equate the custody authorized by section 40302 to incarceration for a criminal offense, we think it overstates the case. (Dis. opn., *post,* pp. 1202-1203.)

true identity"].) Otherwise, in those situations in which the reliability of the evidence turns on factors which neither we nor any other court can predict, the officer will be forced to take into custody persons who should clearly not be inconvenienced. For example, a person who has left his or her wallet at home on a trip to the local market might well find themselves visiting a relatively distant magistrate instead, even though the officer believes they are responsible and will comply with the citation procedure. Such a result would defeat the overall purpose of the Vehicle Code arrest scheme, which is, as we have discussed, to provide a means by which most offenders may be cited and released. In this sense, our conclusions regarding the breadth of the officer's discretion are intended to preserve the officer's discretion to cite and release under those circumstances when custody is not warranted.

Despite the conclusion the officer must retain some discretion to determine what evidence of identity is "satisfactory," that discretion is not unlimited. Though the officer must retain an area of discretion, there are some proofs of identity which should be accepted by the officer as presumptively satisfactory, absent some extrinsic reason to doubt their authenticity. It would be unreasonable to conclude the Legislature intended that an officer could reject documentary evidence of identity which is the effective equivalent of a driver's license. We turn to consideration of what forms of identification other than a driver's license an officer must accept as presumptively satisfactory when they are presented for the officer's examination.

We begin with the driver's license statute itself, which specifies the kind of proof which an officer must accept. The statute requires the license to contain the driver's name, age, mailing address and signature as well as a brief description and photograph of the licensee. (§ 12811; and see *People* v. *Farley, supra,* 20 Cal.App.3d at p. 1036, fn. 2 [noting that draft card, which contained description, address, and signature of holder, was of significantly greater reliability than a social security card].) Read narrowly, section 40302 could be construed to mean that only a driver's license *must* be accepted by the officer, and other forms of identification need be accepted only if "satisfactory." However, we do not believe the Legislature intended such a narrow reading.

First, a California identity card issued under section 13000, though facially relegated to the category of "other satisfactory evidence" of identity by section 40302, was clearly contemplated by the Legislature to be the virtual equivalent of a driver's license for identification purposes. (§ 13005 [card shall resemble driver's license in appearance so far as possible, and shall contain same information].) Where, as here, a nondriver is cited for a

Vehicle Code violation, it would be unreasonable to conclude that an officer could refuse to accept a valid identity card as "satisfactory" evidence of the citee's identity.

In another context, the Legislature has determined that any current written identification which contains at a minimum "a photograph and description of the person named on it, is signed by the person, [and] bears a serial or other identifying number" is "satisfactory evidence" of the identity of a person acknowledging an instrument before a notary. (Civ. Code, § 1185; see Stats. 1982, ch. 197, § 1, p. 669; Leg. Counsel's Dig., Assem. Bill No. 2353, 6 Stats. 1982 (Reg. Sess.), Summary Dig., p. 77 [noting purpose of bill to require notaries to accept certain "paper identification, such as a driver's license" as sufficient for purposes of acknowledgement].) We deduce from this relatively recent addition to the notary statute that there are some kinds of written identification which are, in the view of the Legislature, presumptively "satisfactory," and should be accepted by the officer in the context of a Vehicle Code arrest.

We conclude that proper interpretation of the phrase "satisfactory evidence of identity" requires an officer to accept as presumptively satisfactory any reliable documentary evidence of identity which bears the minimum amount of data required by the Vehicle Code licensing and citation statutes. The form of identification must bear a photograph and description of the person, their signature and a current mailing address, and must be current and serially or otherwise numbered. (See § 12811 [content of license]; § 40500 [form of notice to appear to include name and address of person cited].) Such documentary evidence is the functional equivalent of a driver's license because it is of equivalent reliablity, and because it bears the information necessary to the citation process. When presented with such proof, an officer must accept it as "satisfactory."[9]

Our conclusion that only documentary evidence of identity should be found to be presumptively satisfactory is reinforced by the language of the statute itself, which requires evidence of identity to be "presented" for "examination" by the officer. (§ 40302.) A reasonable reading of the words implies that the evidence is capable of presentation and examination, acts which are ordinarily associated with tangible rather than oral evidence. The use of such language is an additional indication that the Legislature contemplated that documentary evidence would be the primary means by which a citee should establish his or her identity.

---

[9]By our conclusion we do not elevate any form of identification to a position superior to that of an ordinary driver's license; as with such a license, an officer may determine from all the circumstances the identification is false, altered, or for some other reason suspicious, and act accordingly. (See, e.g., § 14610 [unlawful use or alteration of license].)

To sum up, we conclude the only reasonable interpretation of the identity requirements of section 40302 requires an officer to accept either a driver's license or its functional equivalent, but lacking that, the decision whether any other evidence of identity is satisfactory should be left to the discretion of the officer in the field.

■■ Our conclusion regarding the proper interpretation of the meaning of "satisfactory evidence" in turn dictates the scope of the officer's duty to make a sufficient inquiry to elicit evidence of a citee's identity. We begin with the obvious; an officer must, at a minimum, ask a citee for a driver's license.[10] Otherwise, every citee would be subject to mandatory and immediate custodial arrest unless they were able to display a driver's license before the arrest could occur. Moreover, because the officer must accept as satisfactory documentary evidence of identification which is functionally equivalent to a driver's license, an officer should make some further inquiry calculated to discover whether the citee has some form of written identification which is its equivalent. As in this case, a general request for identification satisfies the officer's duty as to all forms of presumptively satisfactory identification. Under the circumstances which ordinarily obtain when an officer issues a citation, a request for "identification" will alert the vast majority of our citizens that some form of documentary identification is required, the present case being a good illustration of the point. When asked for "I.D.," Monroe replied he had none "with him;" as it turned out, he understood the officer's question perfectly, for he had no written identification. Thus, a general request for "identification" satisfies the officer's duty to inquire.

■■ ■■ Based on our conclusions regarding the proper interpretation of section 40302 and the officer's duty of inquiry, we reject appellant's contention the language of the statute directing the officer to accept "other satisfactory evidence of his identity" requires the officer to accept verifiable oral assertions of identity, and by implication, imposes a duty on the officer to make inquiries calculated to elicit such evidence. As we have discussed, the decision whether to accept some evidence of identity other than a driver's license or its equivalent is within the discretion of the officer. It follows that once the officer has established that a citee has no presumptively satisfactory evidence of identity, it is within the officer's discretion to determine that under the circumstances, no other evidence of identity will be satisfactory. When that occurs, the officer may take the citee before a magistrate without further inquiry. We reject the implicit premise of appellant's arguments that an officer has some duty to make inquiries designed to

---

[10]Our statement that the officer must accept certain forms of identification is qualified by the assumption the officer has no reason to believe the identification is false.

elicit whatever evidence of identity a citee may have. Like the problem of defining "satisfactory evidence" for all circumstances, the difficulty of anticipating what inquiries should be made prevents any workable judicial resolution of what is essentially a problem for the officer in the field. Once the officer has made some inquiry which puts the citee on notice that he or she has a duty to produce "evidence of his [or her] identity," (§ 40302), we believe the officer has done all that is required by the statute.

We cannot accept the suggestion of the dissent that an officer *must* make some unspecified inquiry intended to elicit such oral assurances of identity as a citee may be able to provide, and may only take the citee into custody where there are specific and articulable facts from which the officer can conclude the citee has not accurately identified himself. (Dis. opn., *post*, at pp. 1200-1201.) First, such a requirement would invite judicial second-guessing. Unless we are prepared to require some *specific* inquiry, we leave the police officer to speculate when he has asked enough questions to satisfy some future judicial review, or when a court will agree the evidence of identity he has received was insufficient under the circumstances. (Cf. *United States* v. *Ross* (1982) 456 U.S. 798, 826 [72 L.Ed.2d 572, 594-595, 102 S.Ct. 2157] (conc. opn. of Powell, J.) [noting importance of specific guidance to police and courts in recurring problem of automobile searches].) Second, nothing in section 40302 requires the inquiry the dissent would impose. Indeed, to the extent the dissent would impose a burden on *the officer* to establish why a particular attempt at identification was unsatisfactory, the dissent appears to contradict the premise that the burden of producing evidence of identity is on the citee. If the Legislature desired to impose that requirement, it could have done so. However, it has chosen in section 40302 to commit some discretion to the arresting officer, as it has done to an even greater extent in other Vehicle Code arrest statutes. (See §§ 40303, 40304 [decision to take citee into custody made in officer's "judgment" without other criteria].) In short, we believe the dissent's approach is neither practical nor authorized by the statute.

Applying the principles we have discussed to the case at bench, we conclude Officer Brown's decision to take Monroe into custody pending an appearance before the magistrate was reasonable and permitted by section 40302. After his arrest for violation of the open container statute, Monroe was asked if he had any identification; he responded he did not.[11] At that point, Officer Brown had discretion to either continue to question Monroe to

---

[11] The dissent places great emphasis on the distinction between a statement that a citee has no identification, and a statement that the citee has no identification available for presentation to the officer. We see no functional difference; in either case the officer is justified in concluding the citee cannot or will not produce a driver's license or its equivalent.

elicit other evidence of Monroe's identity, or to determine that Monroe should be taken before a magistrate. Officer Brown's decision to take the latter course was authorized by section 40302. We therefore reject Monroe's claim that the ensuing custodial search of his person was illegal because the custody was not permitted by the arrest statute, and turn to his claim the statute is constitutionally invalid if read in the manner we find is correct.[12]

## C.

### Due Process

Because we conclude the decision to accept evidence of identity other than a driver's license or its equivalent is a matter for the discretion of the officer in the field, we must reach appellant's claim the statute is unconstitutionally vague. Appellant's claim rests principally on the United States Supreme Court's ruling in *Kolender* v. *Lawson* (1983) 461 U.S. 352 [75 L.Ed.2d 903, 103 S.Ct. 1855]. In *Kolender,* the Supreme Court invalidated part of a California criminal vagrancy statute as it had been interpreted by the California courts. The statute, Penal Code section 647, subdivision (e),[13] had been read to allow arrest and prosecution where the arrested person failed to provide an officer with "credible and reliable" evidence of their identity when asked to do so. (*People* v. *Solomon* (1973) 33 Cal.App.3d 429, 438 [108 Cal.Rptr. 867]; see *Kolender* v. *Lawson, supra,* 461 U.S. at pp. 355-357 and fn. 4 [75 L.Ed.2d at pp. 907-909] [*Solomon* expressed law of California on point].) The Supreme Court held the statute as interpreted was fatally vague because it "encourage[d] arbitrary enforcement by failing to describe with sufficient particularity what a suspect must do in order to satisfy the statute," i.e., to satisfy the officer that he or she had sufficiently identified himself. (*Kolender* v. *Lawson, supra,* 461 U.S. at p. 361 [75 L.Ed.2d at p. 911].) The court reasoned that "the full discretion accorded to the police to determine whether the suspect has provided a credible and reliable identification necessarily entrust[s] lawmaking to the moment-to-moment judgment of the policeman on his beat. . . . [The California statute] furnishes a convenient tool for harsh and discriminatory enforcement by

---

[12]We note there were several factors which, in retrospect, make Officer Brown's decision seem reasonable. Appellant had turned away from the officers when they attempted to look at his face, had no written identification, and was riding in a rental car while drinking beer. Under the circumstances, Officer Brown might well have decided Monroe could not produce any *evidence of identity which would, under all the circumstances, assure his compliance* with the promise to appear.

[13]Penal Code section 647, subdivision (e) provides that a person is guilty of a misdemeanor who "loiters or wanders upon the streets or from place to place without apparent reason or business and who refuses to identify himself or herself and to account for his or her presence when requested by any peace officer so to do, if the surrounding circumstances are such as to indicate to a reasonable person that the public safety demands such identification."

local prosecuting officials, against particular groups deemed to merit their displeasure, and confers on police a virtually unrestrained power to arrest and charge persons with a violation." (*Id.* at p. 360 [75 L.Ed.2d at p. 911] [internal marks and citations omitted]; and see e.g., *People* v. *Mirmirani* (1981) 30 Cal.3d 375, 382 [178 Cal.Rptr. 792, 636 P.2d 1130]; *Bowland* v. *Municipal Court* (1976) 18 Cal.3d 479, 492 [134 Cal.Rptr. 630, 556 P.2d 1081].)

There is no question that to the extent the "satisfactory evidence" language of section 40302 leaves the determination what is "satisfactory" to the citing officer, it is vague under the principles set out in *Kolender* v. *Lawson, supra*, 461 U.S. 352 [75 L.Ed.2d 903]. As we interpret it, section 40302 in some cases leaves the determination what is reliable evidence of identity entirely to the officer. If section 40302 defined a criminal offense, there would be little question that it would be invalid after *Kolender*. However, it is not such a statute, and the same analysis does not apply.

Section 40302 and similar *procedural* statutes do not define criminal behavior. They are specific legislative delegations of executive discretion to police. Their application presupposes the citee has been arrested for the commission of a public offense, albeit of a special variety. (§ 40302 [statute applies when "any person is arrested for any violation of this code"]; see *Simon, supra*, 7 Cal.3d at p. 200 [Vehicle Code violator is "arrested" when officer has probable cause and begins process of citation].) Once a suspect is legally arrested for violation of a valid criminal statute, there is no constitutional bar to full custody and detention to protect the public and to ensure the arrestee is brought before a magistrate; in short, full custodial arrest is justified. However, the fact that taking the citee into custody under section 40302 is justified because the reliable evidence of identity we have discussed is not presented, does not require the officer to then so act. He retains the executive discretion, but is not required, to obtain other evidence of identity. In sum, the decision whether to implement that power and take the suspect into custody or to cite and release is a discretionary exercise of executive power which here has been expressly delegated to police. Such delegations are permissible, and are not subject to a due process challenge on the ground the delegation of discretion creates a risk of arbitrary enforcement. (See *Sundance* v. *Municipal Court* (1986) 42 Cal.3d 1101, 1133-1134 [232 Cal.Rptr. 814, 729 P.2d 80].)

Our Supreme Court's decision in *Sundance* v. *Municipal Court, supra*, 42 Cal.3d 1101 provides the basis for our rejection of appellant's vagueness challenge. In *Sundance*, a taxpayer and four public inebriates brought suit to enjoin (among other things) alleged constitutional abuses committed by Los

Angeles County officials in their enforcement of Penal Code section 647, subdivision (f), the public intoxication statute. (42 Cal.3d at p. 1108.)[14] Among the challenges raised by the plaintiffs was an attack on an administrative rule which set guidelines under which police were to determine whether certain arrestees under the statute should be released before charges were filed against them. (*Id.* at p. 1133.) Under the guidelines, police had the option of refusing release if the public inebriate in question was a " 'continuing police problem.' " (*Ibid.*) There was no dispute that the provision granted police almost unlimited discretion in the decision whether to release. (*Ibid.*) Plaintiffs argued the grant of discretion was unconstitutional because the regulation failed to give adequate notice of the prohibited conduct, and risked arbitrary enforcement by impermissibly delegating policy choices to " 'policemen, judges, and juries.' " (*Id.* at p. 1134, fn. 20, quoting *Grayned* v. *City of Rockford* (1972) 408 U.S. 104 [33 L.Ed.2d 222, 92 S.Ct. 2294].)

The *Sundance* court[15] rejected the plaintiffs' claims on the ground that the police regulation in question was not a criminal statute and did not purport to regulate the conduct of the public. (*Sundance* v. *Municipal Court, supra,* 42 Cal.3d at p. 1133.) The court noted that the basic policy choice, i.e., to make certain conduct illegal, had been made by the Legislature. Because the regulation did not purport to usurp that function, it was not subject to the requirement that it give adequate notice of prohibited conduct. (*Id.* at p. 1134.) For the same reason, the court held that the regulation was a permissible delegation of prosecutorial discretion to police. (*Ibid.*)

We find the present problem analogous if not identical to that presented in *Sundance.* A citee subject to custody under section 40302 is already under arrest; the decision whether to cite and release the citee or bring him before a magistrate is a discretionary function akin to the decision to prosecute. It is an administrative matter unrelated to the policy choice made by the Legislature, i.e., that certain conduct should be prohibited. Thus, under the principles stated in *Sundance,* the discretion granted by section 40302 is not subject to a vagueness challenge. Section 40302 prescribes the procedure for arrest of a Vehicle Code violator; it does not prohibit conduct, nor is it the

---

[14]Penal Code section 647, subdivision (f) provided that "every person who is 'found in any public place under the influence of intoxicating liquor . . . in such a condition that he or she is unable to exercise care for his or her own safety or the safety of others, or by reason of his or her being under the influence of intoxicating liquor . . . interferes with or obstructs or prevents the free use of any street, sidewalk or public way' is guilty of disorderly conduct, a misdemeanor." (*Sundance* v. *Municipal Court, supra,* 42 Cal.3d at p. 1108.)

[15]The decision in *Sundance* was fragmented. However, a majority of the court necessarily joined in the lead opinion, which was issued "by the Court." (*Sundance* v. *Municipal Court, supra,* 42 Cal.3d at p. 1108.) Accordingly, we follow that opinion, and do not concern ourselves with the views expressed in the various separate concurring opinions.

basis for arrest. We conclude Monroe's vagueness challenge is without foundation.[16]

It is important to note that though we find no basis for a constitutional challenge to the form of police discretion authorized by section 40302 and similar statutes, a citee who believes that discretion has been abused is not without a remedy. Like a challenge to the discretionary decision to prosecute, a challenge to an officer's decision to take a citee into custody must be based on a showing the decision was made on invalid criteria, such as pretext, race, religion, or other classification unrelated to the purpose of the statute, i.e., to ensure the compliance of a citee with the promise to appear. In those cases in which the officer has used the custody procedure for some other purpose, the officer's decision is open to challenge. (*Sundance* v. *Municipal Court, supra,* 42 Cal.3d at pp. 1133-1136; see, e.g., *Wayte* v. *United States* (1985) 470 U.S. 598, 607-608 [84 L.Ed.2d 547, 555-556, 105 S.Ct. 1524] [selective enforcement]; cf. *Com.* v. *Williams* (1990) 390 Pa.Super. 493 [568 A.2d 1281, 1287] [given probable cause, discretionary decision to arrest not constitutionally significant absent evidence of discriminatory enforcement].)

Our conclusion that section 40302 is not subject to a vagueness challenge is reinforced by the lack of any authority finding any similar statute vague, despite the fact that statutes granting police discretion to cite and release minor offenders are commonplace. The majority of jurisdictions have expressly provided some sort of discretionary citation mechanism. Under these provisions, which typically involve traffic and other minor offenses, police have discretion under various circumstances to cite and release rather than to take the offender into custody. (See Williams, The Law and Politics of Police Discretion (1985) pp. 80-82 [discussing state citation law]; LaFave, Arrest (1965) pp. 168-173; Kamisar et al., Criminal Procedure (5th ed. 1980) p. 402, fn. a; see, e.g., § 40303 [where custody not required by law, officer may nonetheless take citee into custody in his "judgment" for specified violations]; § 40304 [highway patrol officer may in his "judgment" either cite or take non-Vehicle Code offender into custody]; Pen. Code, §§ 853.5, 853.6, subd. (i); Ill. Ann. Stat., ch. 38, § 107-12 (West 1980) [officer "may"

---

[16]We do not agree with the dissent's claim that a traffic citee is in a markedly different category from the public inebriates considered in *Sundance.* (Dis. opn., *post,* at pp. 1202-1203.) A traffic citee is an arrested public offender who, when unable to produce identification, is by statute made subject to the level of custody required to bring him before a magistrate or equivalent official. The public inebriates in *Sundance* were arrested offenders who were by statute and rule subject to incarceration. In both cases, police are given discretionary power to determine the extent to which the offenders will be deprived of their liberty, though the degree of deprivation differs. The fact that traffic offenders may not be incarcerated for their crime and inebriates may be is a distinction without a difference.

issue citation]; Fla. Stat. Ann., § 901.28 (West 1985) [discretion to arrest on failure to supply satisfactory identification]; Alaska Stat. § 12.25.180, subd. (b)(1) (1991) [same].) These procedural statutes are representative of the delegation of discretion to police to decide when a particular offender should be issued a citation or taken before a magistrate, or in the case of the identity statutes, to determine what evidence of identification is satisfactory when a citee cannot produce a driver's license or its equivalent. As such, these statutes are a recognition of the practical importance of discretion in the everyday administration of traffic laws, which is the category of penal law which most directly affects the majority of citizens, and is their most likely point of contact with police. There are many circumstances under which arrest and custody for minor violations would be inappropriate and undesirable, even though the offender lacks any official identity document. To allow a vagueness challenge to these procedural statutes would be incorrect, and would cause untold confusion and harm to both the administration of minor traffic matters, and to those unfortunate enough to fall outside the inflexible categorization which would necessarily result from an attempt to shear police of discretion in the decision to cite and release for minor offenses. For that reason as well as those discussed above, we decline to allow Monroe's vagueness claim.

## D.

### Other Claims

We briefly dispose of Monroe's other claims of error. ■ As we have noted, there is no merit in his claim the officers lacked probable cause to arrest him for violation of the open container statute. (See fn. 4, *ante*.) ■ For similar reasons, we reject the claim the investigative stop of the car in which Monroe was riding was invalid. (See, e.g., *In re Tony C.* (1978) 21 Cal.3d 888, 893 [148 Cal.Rptr. 366, 582 P.2d 957].) We remind Monroe that we must view the evidence in the light most favorable to the ruling below. So viewed, there were "specific and articulable facts causing [the officers] to suspect" Monroe was a fugitive from a murder charge. (*Ibid.*) Monroe matched the description of the suspect in several particulars, was in a neighborhood frequented by the suspect, and was in a rental car connected with the state in which the suspect was reportedly seen. These facts, coupled with Monroe's seeming attempt to hide his face from the officers when they pulled up next to his car, were enough to warrant the investigative stop.[17]

■ We find no merit in the claim the officers were required to terminate their investigation and release Monroe immediately upon learning he

---

[17]In a portion of his argument of this point, Monroe implies the stop was pretextual. Appellant cites no authority, and does not attempt to show the trial court's implicit conclusion

was not the murder suspect. Viewed in the light most favorable to the ruling, the evidence supported the trial court's implicit conclusion that the officers discovered the open containers of alcohol either before or at the same time they realized Monroe was not the one they sought. Accordingly, there was probable cause to arrest Monroe, and no basis for immediate release.

We reject without extended discussion Monroe's contention the search of his person was prohibited by the rule of *Simon, supra,* 7 Cal.3d at page 209 (search of person not permissible in connection with custody under § 40302.) Pursuant to initiative constitutional amendment, "courts may not exclude evidence seized in violation of either the state or federal Constitution unless exclusion is compelled by the federal Constitution," absent some specific statutory mandate. (*In re Lance W.* (1985) 37 Cal.3d 873, 888 [210 Cal.Rptr. 631, 694 P.2d 744].) *United States* v. *Robinson* (1973) 414 U.S. 218 [38 L.Ed.2d 427, 94 S.Ct. 467], holds any "custodial arrest" supports a full search of the person taken into custody, without regard to the nature of the offense for which the arrest was made. (*Id.* at pp. 234-235 [38 L.Ed.2d at pp. 439-440].) Monroe argues *Robinson* left open the question whether an arrest pursuant to section 40302 would subject the arrestee to full search. We disagree. The only question left open in *Robinson* was whether such a search would be reasonable where the defendant was subjected to a " 'routine traffic stop' " only, without being taken into custody. (414 U.S. at p. 236, fn. 6 [38 L.Ed.2d at p. 441].) Here, Monroe was taken into custody; *Robinson* holds a search incident to that event is constitutionally reasonable. (See generally, 2 LaFave, Search and Seizure (2d ed. 1987) § 5.2, pp. 438-441.) Because the rule of *Simon* is a judicially created exclusionary rule not required by the federal constitution, it has been abrogated under the principles stated in *In re Lance W., supra,* 37 Cal.3d at page 888. Appellant's position that *Simon* requires reversal is therefore without merit.

■ Finally, appellant argues the trial court abused its discretion when it refused to refer him to the California Rehabilitation Center (CRC) as an alternative to a state prison sentence. (Welf. & Inst. Code, § 3051.) Welfare and Institutions Code section 3051 provides that, upon conviction for any crime, a court shall suspend execution of sentence and refer the defendant to CRC if it appears the defendant is either addicted to narcotics or is about to become so. However, the statute also provides the court may decline to make the CRC referral if "in the opinion of the judge, the defendant's record and probation report indicate such a pattern of criminality that he or she does not constitute a fit subject for commitment." (Welf. & Inst. Code, § 3051; see, e.g., *People* v. *Sanford* (1988) 204 Cal.App.3d 1181, 1183 [251 Cal.Rptr.

to the contrary was not supported by the evidence. We therefore do not address the implication.

707].) Here, the court specifically found a pattern of criminality rendering Monroe unfit for rehabilitation. The record supported the trial court's finding. (See, e.g., *People* v. *Ellers* (1980) 108 Cal.App.3d 943, 956 [166 Cal.Rptr. 888] [standard of review].) In the period 1985 through 1989, Monroe had suffered prior convictions of theft, battery, receiving stolen property, and firearms and narcotics offenses. The probation officer noted Monroe's "extensive criminal history," his parole violations, and the statement of Monroe's parole officer that Monroe "exhibited the attitude of a professional criminal." We find no abuse of discretion.

DISPOSITION

The judgment is affirmed.

Peterson, J.,* concurred.

SMITH, Acting P. J.—I respectfully dissent. The majority interpret section 40302 of the Vehicle Code (all further undesignated references are to that code) in such a manner that a person cited for a simple traffic infraction may, at the election of the citing officer, be handcuffed and involuntarily transported to a distant booking station solely because he lacks what they call "presumptively satisfactory" written identification. This result is not only inconsistent with the intent behind the identification statute, but opens the door for arbitrary treatment under the guise of routine police procedure.

I

At the outset it is important to clarify what was said in the critical exchange between Officer Brown and Monroe. Brown stated that Monroe was still seated in the car when he asked him his name; Monroe gave the name "Erik Monroe." According to Brown, within "five to ten seconds" of this initial contact he noticed a Big Gulp cup containing beer on the floorboard and smelled alcohol. Brown then testified: "I asked him if he had identification. [¶] Q. Was Mr. Monroe able to produce any identification to you? [¶] A. Well, I also asked him to step from the vehicle. He complied. He stepped from the vehicle, and he said, 'I don't have any I.D. *with me.*' " (Italics added.)

On the next page of the transcript the officer offhandedly referred to Monroe's reply as "I don't have any I.D." Defense counsel, however, alert to the important distinction, later asked the officer to clarify the discrepancy.

*Presiding Justice of the Court of Appeal, First District, Division Five, sitting under assignment by the Chairperson of the Judicial Council.

Officer Brown confirmed that the first version he gave was correct: "Q. Officer, when you asked Mr. Monroe for identification, he said that he didn't have any *with him*, is that right? A. He said he didn't have any, yeah, *or any with him, yes*." (Italics added.)

Although credibility is a matter for the trial court and we cannot interfere with its resolution of *conflicts in the evidence* (*People* v. *Leyba* (1981) 29 Cal.3d 591, 596 [174 Cal.Rptr. 867, 629 P.2d 961]), there is *no conflict* where an apparent inconsistency is ultimately resolved by the witness himself. Secondly, our duty to view the evidence most favorable to the ruling below carries with it the simultaneous duty to resolve the issue in light of the *whole* record, not based on " 'isolated bits of evidence' " favorable to the prosecution. (*People* v. *Johnson* (1980) 26 Cal.3d 557, 577 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255], quoting *People* v. *Bassett* (1968) 69 Cal.2d 122, 138 [70 Cal.Rptr. 193, 443 P.2d 777].) The obvious import of the officer's testimony and a proper reading of the record compels the conclusion that Monroe's reply to the officer's request for identification was: "I don't have any I.D. *with me*."

Here, Monroe had already given the officer his name and showed cooperation by immediately complying with the request to step out of the car. Monroe's response "I don't have any I.D. with me" was the equivalent of saying "I don't have any documentary evidence in my possession," or more colloquially, "I left my wallet at home." This statement simply informs the officer that the person forgot to bring along written identification.

## II

As the majority correctly note, California has a multitiered system in dealing with persons who are stopped and cited by law enforcement officers for minor traffic violations, a scheme which "in effect presumes that in the vast majority of cases the violator will not be taken into custody . . . ." With certain exceptions, the officer will "prepare a written notice to appear (i.e., a citation or 'ticket'), and . . . release the violator 'forthwith' when the latter in turn gives his written promise that he will appear as directed . . . ." (*People* v. *Superior Court* (*Simon*) (1972) 7 Cal.3d 186, 199 [101 Cal.Rptr. 837, 496 P.2d 1205] (*Simon*).)

Section 40302, subdivision (a) (section 40302(a)), sets out one *exception* to the officer's normal duty to cite and release a person stopped for a minor traffic violation. Unlike companion statutes which truly grant the officer the option of taking the citee into custody in more serious cases (§ 40303 [person arrested for certain enumerated offenses "shall, *in the judgment of*

*the arresting officer,*" either be given a notice to appear or be taken without unnecessary delay before a magistrate]; § 40304 [whenever person is arrested by highway patrol officer for misdemeanor not specified in the Vehicle Code, "he *shall, in the judgment of the arresting officer,*" either be issued a citation or be brought before a magistrate]), section 40302(a) is couched strictly in mandatory terms. It declares that when a person is cited for a violation of the Vehicle Code not declared to be a felony, he "*shall* be taken without unnecessary delay before a magistrate" when he "*fails to present his driver's license or other satisfactory evidence of his identity* for examination." (§ 40302(a), italics added.)

As noted in *Simon,* section 40302 is procedural not penal in nature and cannot itself form the basis for a lawful custodial arrest. Nevertheless a person "who is actually taken into police custody for transportation before a magistrate pursuant to section 40302 . . . is 'under arrest' in the traditional sense of the term. [Citations.]" (*Simon, supra,* 7 Cal.3d at pp. 200-201.)

The next issue is what constitutes "satisfactory" evidence of identification. The majority conclude that every citizen of this state must, to ensure that he or she will not be taken into custody for a vehicular infraction, carry what they term "presumptively satisfactory" documentary identification—either a driver's license or its functional equivalent. (Maj. opn., *ante* pp. 1186-1187.) Lacking that, say the majority, a citizen stopped for a minor traffic offense may either be cited and released or hauled down to the police station to be brought before a magistrate, at the option of the citing officer. This remarkable conclusion goes far beyond the statutory purpose behind section 40302.

The citation and release system "is essentially an honor system, requiring the good faith and cooperation of the person cited." (*Simon, supra,* 7 Cal.3d at p. 201.) Clearly, when an officer stops a person for a traffic offense it is important that the citee properly identify himself, since a promise to appear without evidence that the person signing it is who he says he is "signifies little." (*People* v. *Mercurio* (1970) 10 Cal.App.3d 426, 430 [88 Cal.Rptr. 750].) Section 40302 is designed to satisfy that concern.

The identification statute requires that the citee present "for examination" either a driver's license *or* other satisfactory evidence of identity. In the words of Justice Mosk, he must be able to convince the officer—"either by exhibiting his driver's license or by 'other satisfactory evidence'—that the name he is signing on the written promise to appear corresponds to his true identity. [Citation.]" (*Simon, supra,* 7 Cal.3d at p. 201.) Since "other satisfactory evidence" is defined by reference to a driver's license, it follows that documentary evidence which constitutes the functional equivalent of an

operator's license should be accepted by the officer, absent some reason to doubt its authenticity.[1]

It does *not* follow, however, that unless a citizen carries such identification at all times, he risks being transported against his will to answer for a vehicular infraction. There is nothing in section 40302 which implies that such punitive measures might flow from a failure to carry written identification. It is not uncommon for law-abiding individuals to occasionally leave home without taking along a driver's license or other written evidence of identity. The majority's interpretation gives the police the power to impose onerous sanctions on forgetful persons who have committed trivial violations of the law.

In today's computer age the officer in the field has a host of readily available methods of verifying the identity of a person who does not happen to have written identification in his possession. For example, a licensee who forgot his license will still be able to give a full name, address and date of birth and may even be able to recite his driver's license number from memory. In a matter of minutes, the officer can relay this data into a central computer and discover whether the record on file matches the description of and information given by the person he has stopped. A person who does not have a driver's license may be tested on certain information he gives regarding his residence, telephone number and/or place of employment. The officer may be able to ask another person at the scene whose identity has been verified to vouch for the citee's identity. Arrest and parole records are other sources of verifiable information.

The statute's use of the term "examination" does not, as the majority infer, preclude satisfactory proof of identification by oral means. The dictionary defines "examine," as "to inquire into carefully," and "to test by questioning in order to determine . . . fitness, or knowledge." (Webster's Ninth New Collegiate Dict. (1984) p. 431.) By exhibiting identifying documents, by orally presenting the officer with verifiable identifying information, or through a combination of both, a detainee may be able to provide satisfactory evidence of his identity.

Oral evidence as an alternative means of identification necessarily forms an integral part of the honor system which the Legislature intended to create in establishing the cite and-release procedure for minor traffic offenses. No

---

[1]Section 12811 requires every California operator's license to contain the driver's name, age, mailing address and signature as well as a brief description and photograph of the driver for purposes of identification. Documentation which contains similar identifying material thus provides reasonable assurance that the person has accurately identified himself to the officer.

state interest is served by punishing a person for not having adequate written identification. The "satisfactory evidence" requirement is there for the sole purpose of providing reasonable assurance that the cited person will fulfill his promise to appear to answer for the infraction. It follows that as an alternative to producing a valid driver's license or its equivalent, the detainee should be allowed to convince the officer by other satisfactory proof that the name he is signing on the promise to appear corresponds to his true identity. Indeed, it appears to be an already common practice among law enforcement officers to exhaust nondocumentary methods of confirming identity before taking a traffic citee into custody. (E.g., *People* v. *Grant* (1990) 217 Cal.App.3d 1451, 1455, 1459 [266 Cal.Rptr. 587]; *People* v. *Long* (1987) 189 Cal.App.3d 77, 88, fn. 4 [234 Cal.Rptr. 271].)

I conclude that under section 40302(a), a cited person must be allowed to identify himself to a law enforcement officer through *either* the presentation of a valid driver's license *or* by offering other competent proof. "Other satisfactory evidence" in this context includes written evidence of identity and/or verification by oral means. Accordingly, an officer who cites a person for a minor traffic offense has a duty to question him in a manner which encompasses both of these prongs of section 40302(a) before taking that person into custody for failure to present satisfactory identification. The officer need not recite any magic words, as long as he gives the detainee a reasonable opportunity to identify himself. Once proper inquiry has been made, the burden passes to the citee to convince the officer of his identity through satisfactory means.

Contrary to the majority's suggestion, nothing in this analysis *requires* an officer to accept oral assurances of identity. The individual officer may still weigh the sufficiency of the identification which has been provided. But this "discretion," if one may use that term, is not the complete unbounded discretion of which the majority speak. It is a discretion which can be abused if the officer acts unreasonably or arbitrarily. Since the honor system embodied in section 40302 presumes that most violators will be cited and released, an officer should have some specific articulable reason to doubt that the cited person has accurately identified himself before taking him into custody. (Cf. *People* v. *Grant, supra,* 217 Cal.App.3d at pp. 1455, 1459; *People* v. *Long, supra,* 189 Cal.App.3d 77, 88, fn. 4.)

The majority's concerns that requiring the officer to allow the cited person the opportunity to identify himself orally would saddle the court with the task of "requir[ing] some specific inquiry" or would relieve the citee of his burden of producing identification (maj. opn., *ante,* p. 189, italics omitted) are unfounded. The statute refers to "other satisfactory evidence" of identity.

My conclusion that such evidence may take oral as well as written form and that the citee must be given a chance to produce either or both provides an easily workable standard for the officer and in no way infringes upon the precept that it is still the citee's burden to identify himself and the officer's prerogative to determine the adequacy of the identification.

Here, Officer Brown's request for identification was met with the response that Monroe had no documentary proof in his possession. Clearly, Monroe had the ability to identify himself orally (thereby providing assurance that his promise to appear would be honored) as shown by the parole number and other information he gave to the officer *following* his arrest. Instead, without giving Monroe the opportunity to identify himself by alternative means, Officer Brown effectuated an immediate custodial arrest. Only after Monroe was handcuffed and searched did Officer Brown ask identity-related questions which, as it turned out, were answered quite truthfully.

The majority harp on an imagined demand by this dissent that the police officer conduct some *Miranda*-like interrogation before an arrest can take place. That assumption is without justification. The problem here is not that Brown failed to utter any "magic words" but that he spoke *no words* at all to indicate to the citee that he could offer "other satisfactory evidence" to prove his identity. In other words, the officer, without tracking the language of section 40302(a) and contrary to the purpose of that section, leapt at the opportunity to arrest Monroe.

Because Monroe was taken into custody solely on the basis of his statement that he possessed no *written* identification and without having been afforded the chance to offer nondocumentary proof of his identity, the custodial arrest was unlawful. And since the only justification for the search advanced by the People was a search incident to the custodial arrest, it follows that the warrantless search violated Monroe's Fourth Amendment rights.

## III

The majority's conclusion not only misreads the legislative intent behind the statute, it poses constitutional problems. Courts have a duty to construe a statute in a manner which will preserve its constitutionality and avoid challenges for vagueness. (*Pryor* v. *Municipal Court* (1979) 25 Cal.3d 238, 253-254 [158 Cal.Rptr. 330, 599 P.2d 636]; *In re Kay* (1970) 1 Cal.3d 930, 942 [83 Cal.Rptr. 686, 464 P.2d 142].) "[A] statute must provide sufficiently definite guidelines for the police in order to prevent arbitrary and discriminatory enforcement. 'A vague law impermissibly delegates basic policy

matters to policemen, judges and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application.'" (*People* v. *Superior Court* (*Caswell*) (1988) 46 Cal.3d 381, 390 [250 Cal.Rptr. 515, 758 P.2d 1046], citing *Grayned* v. *City of Rockford* (1972) 408 U.S. 104, 108 [33 L.Ed.2d 222, 227-228, 92 S.Ct. 2294].)

In *Kolender* v. *Lawson* (1983) 461 U.S. 352 [75 L.Ed.2d 903, 103 S.Ct. 1855] (*Kolender*) the United States Supreme Court held void for vagueness Penal Code former section 647, subdivision (e), which required an individual to provide "credible and reliable" identification when requested by a police officer who had reasonable suspicion of criminal activity to justify a *Terry* detention. The court held the statute was unconstitutionally vague because it "vests virtually complete discretion in the hands of the police to determine whether the suspect has satisfied the statute," (*Kolender, supra*, 461 U.S. at p. 358 [75 L.Ed.2d at p. 909]) and "encourages arbitrary enforcement by failing to describe with sufficient particularity what a suspect must do in order to satisfy the statute." (*Id.*, at p. 361 [75 L.Ed.2d at p. 911].)

The majority imbue section 40302(a) with the same constitutionally offensive attributes described by the Supreme Court in *Kolender*. If the cited person does not present a driver's license or a document of equal value "satisfactory evidence" is, according to the majority, whatever the citing officer decides it is. One person may present the officer with copious, verifiable nondocumentary evidence of identification and be arrested, searched and booked. Another may simply tell the officer that he is John Doe of 123 Roe Street and be released. Allowing the result to turn solely on the personal predilections of the officer "furnishes a convenient tool for harsh and discriminatory enforcement by local prosecuting officials, against particular groups deemed to merit their displeasure. . . . [Citations.]" (*Kolender, supra*, 461 U.S. 352, 360 [75 L.Ed.2d 903-911], internal quotation marks omitted.)

To gloss over the troublesome consequences of their reasoning, as the majority do, by calling the statute "procedural" misses the point. Since a person taken into custody for transportation before a magistrate under section 40302 is "'under arrest' in the traditional sense of the term" he is deprived of his liberty just as surely as one who has been arrested for a jailable offense. (*Simon, supra*, 7 Cal.3d 186, 200.) The majority's trivialization of the intrusion by pointing out that the arrestee is not technically "incarcerated" (maj. opn., *ante*, p. 1185, fn. 8) is of little comfort to those who are not only subjected to search and seizure but deprived of their freedom of movement for reasons which the police need not explain or justify.

The majority's use of *Sundance* v. *Municipal Court* (1986) 42 Cal.3d 1101 [232 Cal.Rptr. 814, 729 P.2d 80], to authorize limitless discretion by the officer is likewise far off the mark. *Sundance* involved a police regulation governing whether to keep persons arrested for public drunkenness in jail or release them. An inebriate taken into custody by the police has violated the law and is already subject to incarceration. The only remaining decision is whether to book him or let him go, a matter unquestionably within the realm of prosecutorial discretion. By contrast, the traffic citee has not done anything for which he may be taken into custody or jailed—in fact, incarceration for a person guilty of no more than a traffic infraction is statutorily proscribed. (Pen. Code, § 19.6; see Review of Selected 1968 Code Legislation (Cont.Ed.Bar 1968) pp. 248-251.) Thus, the person stopped for a traffic violation stands in much the same posture as the *Terry*-stop suspect in *Kolender*.

I find it inconceivable that the Legislature intended the anomalous result that a person who cannot be deprived of his liberty for a traffic infraction even were he to be found guilty, may nevertheless be subjected to custodial arrest at the option of the officer writing the ticket merely because he does not happen to have *written* evidence of identity in his possession.[3]

By imposing a de facto requirement that one present formal documentary evidence of identity upon being cited for a nonjailable violation of the Vehicle Code and granting the officer unbridled authority to search, seize and transport those who do not possess such documentation, the majority encourage arbitrary treatment of our citizens and convert what is essentially a procedural statute into a penal one, conferring virtually unrestrained power on the police to arrest and take into custody persons who have merely forgotten to carry paper identification with them. (See generally Krüger,

---

[3]My conclusion is underscored by the legislative history of Penal Code section 853.5 which addresses itself to the citing procedure to be employed in the case of nonvehicular infractions. That section provides: "In all cases, except as specified in Sections 40302 [and others] of the Vehicle Code, in which a person is arrested for an infraction, a peace officer shall only require the arrestee to present his driver's license or other satisfactory evidence of his identity for examination and to sign a written promise to appear. *Only if the arrestee refuses to present such identification or, refuses to sign such a written promise may the arrestee be taken into custody.*" (Italics added.)

The italicized language was inserted into the statute by a 1980 amendment, originating as Assembly Bill No. 2296 (AB 2296). (Stats. 1980, ch. 238, § 1, p. 480). The bill analysis prepared by the Assembly Committee on Criminal Justice states, "AB 2296 is intended to create statewide, uniform treatment of persons cited for infraction violations, permitting custody only under the most specific and necessary of conditions. Proponents indicate that inasmuch as jail would be a prohibited sanction if the person is *convicted* of an infraction, it makes little sense to incarcerate a person who is merely *arrested and charged* with the infraction." (Bill Analysis, Assem. Com. on Criminal Justice, Mar. 17, 1980, p. 1, italics original.)

*Police Demand For Documentary Identification* (1992) 13 Crim. Justice. J. 243.)

Equal treatment should be afforded the motorist who has forgotten his driver's license on a spur-of-the-moment afternoon trip to the suburban hardware store as well as the one returning from a social event at midnight in the inner city. Both should be granted the same right to prove identity by nondocumentary means before undergoing the degrading process of a custodial arrest. Requiring the officer to permit identification by both written and oral methods before depriving the citee of his liberty promotes such fair and evenhanded treatment.

I would reverse the judgment.

A petition for a rehearing was denied February 24, 1993. Smith, J., was of the opinion that the petition should be granted. Appellant's petition for review by the Supreme Court was denied April 29, 1993. Mosk, J., was of the opinion that the petition should be granted.