[Crim. No. 34927. Second Dist., Div. Five. Mar. 27, 1980.]

THE PEOPLE, Plaintiff and Appellant, v.
BERNARD JONES et al., Defendants and Respondents.

**COUNSEL**

John K. Van de Kamp, District Attorney, Donald J. Kaplan and Maurice H. Oppenheim, Deputy District Attorneys, for Plaintiff and Appellant.

Jerry Kaplan, under appointment by the Court of Appeal, Wilbur F. Littlefield, Public Defender, Stuart Stahl, Dennis A. Fischer, and Norma Mitchell, Deputy Public Defenders, and James Cooney for Defendants and Respondents.

**OPINION**

**KAUS, P. J.**—After a preliminary hearing defendants Bernard Jones, Roy Rogers and Darryl Jones were bound over on a charge of having violated section 10851 of the Vehicle Code on September 28, 1978.

In the superior court all three defendants successfully moved for dismissals of the information. The People appeal. (Pen. Code, § 1238, subds. (a) (1), (a) (7).)

FACTS

The victim, Alice Hampton, parked her 1964 Volvo, license OWN 124 on the street in front of her home at 6:15 p.m. on September 27, 1978. She discovered that the car was missing after she received a telephone call at about 3:15 a.m. on September 28. She had not given anyone permission to take the car.

That night at about 3:10 a.m. Officers Wickham and Twohy were on patrol on LaBrea, northbound between Pico and Olympic. They knew nothing about the stolen Volvo. Wickham's attention was attracted by two southbound Volvos which "appeared to be the same model vehicle, however, one was very clean looking, and the other one had primer spots, dents, a trunk of a different color." The clean Volvo was the lead car and was yellow. The other Volvo was red. Neither its head nor its tail lights were on and it was following the lead car "within a car length." Wickham's training and experience told him that when "[t]wo cars have a like body style, like make, one following behind the other ... there is a good likelihood at that time in the morning that one of the vehicles is stolen because occupants of one of the vehicles drive to a location and obtain another like vehicle for either parts or switching of the VIN plate and the license plates from say a bad car or a car in lesser condition with good paperwork, that is registration through the Department of Motor Vehicles, switching the VIN plates and the license plates to the car in better condition." The officers then made a U-turn and pulled in behind the two Volvos. After they followed them for half a block the rear Volvo—the one with the lights out—turned into an "inlet" lane on the right. At that point a slide hammer was thrown out of the right side window of the car. A slide hammer, in the officer's experience, "is a common, very, very common tool used in stealing cars to remove ignitions thereby allowing the suspect to use only a screwdriver to actuate the ignition on [sic] the car." The rear Volvo was then "red lighted" and its occupants, defendants Roy Rogers and Darryl Jones, were arrested for grand theft auto. Wickham left them at the scene with Officer Twohy and pursued the yellow Volvo with which he caught up at Venice and Hauser. As soon as that car was stopped he noticed that its ignition was missing. Its driver, defendant Bernard Jones, was then placed under arrest. The car was soon identified as Alice Hampton's. Darryl Jones' fingerprints were on the body of the yellow Volvo. A screwdriver was found in the car. Several photographs of the car were taken and received in evidence.

## DISCUSSION

The information against Bernard Jones was dismissed under section 995 of the Penal Code because the court felt that the principle of *People* v. *Superior Court* (*Kiefer*) (1970) 3 Cal.3d 807 [91 Cal.Rptr. 729, 478 P.2d 449, 45 A.L.R.3d 559] compelled it to hold that the stopping and detention of the yellow Volvo was unauthorized by any facts known

to the officers. Later the other two defendants successfully moved to suppress any evidence derived from the allegedly illegal stop of the yellow Volvo—the screwdriver, the fingerprints, as well as the photographs showing its physical condition, such as the lack of an ignition. Since this admittedly left the prosecutor without a case the court dismissed the charges against Rogers and Darryl Jones under section 1385 of the Penal Code.

We do not agree that this case is governed by *Kiefer*. That case involved innocuous actions of the driver of a single car. Here the officers observed two cars presenting complementary indicia of criminality—indicia which, based on their training and experience, indicated that the cars' occupants were about to follow a distinctive m.o. involving two cars, to hide the fact that one of the cars had been stolen. This suspicion was soon strengthened when the slide hammer was thrown from the red Volvo. True, it was possible that Bernard Jones, the driver of the yellow Volvo, was a victim of circumstances beyond his control when he was closely followed at 3 a.m., by a car of the same make and model, but in poor physical shape, with its lights out and a slide hammer flying out of its window. Nevertheless, the Fourth Amendment is no guarantee against reasonable mistakes: "[S]ufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment . . . ." (*Hill* v. *California* (1971) 401 U.S. 797, 803-804 [28 L.Ed.2d 484, 490, 91 S.Ct. 1106]; see also *Theodor* v. *Superior Court* (1972) 8 Cal.3d 77, 99-100 [104 Cal.Rptr. 226, 501 P.2d 234].)

That a detention may properly be based, in part, on expertise was explicitly recognized in *In re Tony C.* (1978) 21 Cal.3d 888, 893 [148 Cal.Rptr. 366, 582 P.2d 957]: "[T]he courts have concluded that in order to justify an investigative stop or detention the circumstances known or apparent to the officer must include specific and articulable facts causing him to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person he intends to stop or detain is involved in that activity. Not only must he subjectively entertain such a suspicion, but it must be objectively reasonable for him to do so: the facts must be such as would cause any reasonable police officer in a like position, drawing when appropriate on his training and experience (*People* v. *Superior Court* (*Kiefer*) *supra*, 3 Cal.3d at p. 827), to suspect the same criminal activity and the same involvement by the person in question. The corollary to this rule, of course, is that an investigative stop or detention predicated on mere

curiosity, rumor, or hunch is unlawful, even though the officer may be acting in complete good faith. [Citation.]"[1]

██ Defendants claim, however, that the stop of the yellow Volvo was based on a "hunch" as distinguished from a reasonable deduction based on observed facts, evaluated in the light of training and experience. This argument is mainly based on the question and answer quoted below.[2] We disagree. The reasonableness of a detention does not depend on the precise words which an officer on the stand chooses to describe his state of mind at the scene—particularly when they are put in his mouth by counsel. In any event, we note that a little later on the same page the officer answered in the affirmative when asked whether he formed an "opinion" that he had "two felonies on [his] hands."

Reversed.

Stephens, J., and Hastings, J., concurred.

---

[1]It would be ironical if evidence concerning a criminal modus operandi were admissible on the question of guilt—see *People* v. *Crooks* (1967) 250 Cal.App.2d 788, 790-792 [59 Cal.Rptr. 39] and *People* v. *Clay* (1964) 227 Cal.App.2d 87, 94-98 [38 Cal.Rptr. 431, 100 A.L.R.2d 1421]—but could not be taken into consideration on the issue of probable cause to detain.

[2]"Q.  You presumed this because of a gut reaction, would you say, Officer Wickham, based on what you have told us? A.  Two reasons, the traffic violation for no lights and the gut feeling that one of the vehicles was stolen, yes."