[Crim. No. 21650. June 25, 1981.]

THE PEOPLE, Plaintiff and Appellant, v.
MICHAEL PATRICK LEYBA, Defendant and Respondent.

COUNSEL

John K. Van de Kamp, District Attorney, Donald J. Kaplan and Richard W. Gerry, Deputy District Attorneys, for Plaintiff and Appellant.

Wilbur F. Littlefield, Public Defender, Dennis A. Fischer, Larry S. Beyersdorf and John Hamilton Scott, Deputy Public Defenders, for Defendant and Respondent.

OPINION

THE COURT.*—We granted a hearing in this case to review the propriety of an investigative detention of defendant by police officers. After an independent study of the issues, we have concluded that the thoughtful opinion of Justice Newman (J. M.), assigned to sit with the Court of Appeal, Second Appellate District, in this case, correctly treats the issues and that we should adopt it as our own. That opinion, with appropriate deletions and additions,† is as follows:

The People appeal (Pen. Code, § 1238, subd. (a) (7)) from an order of the Superior Court of Los Angeles County dismissing an information (Pen. Code, § 1385) following the granting of defendant's motion for suppression of evidence under Penal Code section 1538.5. Defendant Michael Patrick Leyba was charged in the information with possession of phencyclidine, in violation of Health and Safety Code section 11377, subdivision (a).

FACTS

On June 22, 1979, at 11:30 p.m., Los Angeles County Deputy Sheriffs Lee and Flagett were investigating a "grand theft-person" report at the intersection of Meyer and Carmenita Streets. Their patrol car was

---

*Before Bird, C. J., Tobriner, J., Mosk, J., Richardson, J., Newman, J., Taylor, J.,‡ and Feinberg, J.‡

†Brackets together, in this manner [], are used to indicate deletions from the opinion of the Court of Appeal; brackets enclosing material (other than the editor's parallel citations) are, unless otherwise indicted, used to denote insertions or additions by this court. (*Estate of McDill* (1975) 14 Cal.3d 831, 834 [122 Cal.Rptr. 754, 537 P.2d 874].)

---

‡Assigned by the Chairperson of the Judicial Council.

parked on Meyer, west of Mina. While Deputy Sheriff Lee was sitting in the patrol car, he saw a black Monte Carlo automobile turn northbound onto Mina from Meyer Street. A school is located on the northeast corner of Mina and Meyer Streets. Deputy Sheriff Lee saw the headlights on the Monte Carlo blink on and off several times. After the lights in the Monte Carlo blinked, Deputy Sheriff Lee observed a light colored vehicle in the school parking lot blink its lights on and off several times. He was approximately 75 yards away from the 2 cars as they blinked their headlights. As the Monte Carlo continued northbound on Mina, the light colored vehicle drove out of the school parking lot and followed the Monte Carlo in a northbound direction.

At the time he made these observations, Deputy Sheriff Lee was sitting in the patrol car with the grand theft-person suspect. His partner, Deputy Sheriff Flagett was standing next to the car, interviewing the victim of and witnesses to that offense. Deputy Sheriff Lee shouted to his partner that something requiring their attention was happening and that they should proceed to investigate.

Deputy Sheriff Lee was familiar with the school and the surrounding area. The school was closed and he was not aware of any classes which were in session at that hour. Deputy Sheriff Lee was aware of Mexican gang activity and that a number of school and other burglaries had occurred in the area, although he was not sure if that particular school had been burglarized.

Deputy Sheriff Lee believed that the blinking lights indicated the occupants of the two cars were signalling one another, perhaps to warn of police presence. He concluded that some kind of illegal activity was taking place, the nature of which he did not know, although "the strong possibility existed that a school burglary had taken place."

Deputy Sheriff Flagett joined Lee in the patrol car and they drove in pursuit of the two cars, first proceeding east on Meyer to Mina and then northbound on Mina. Lee lost sight of the light colored car, but saw the Monte Carlo make a U-turn and park in a southbound direction in front of a residence at the intersection of Mina and Mitoney Streets. Deputy Sheriff Lee stopped the patrol car at an angle facing the Monte Carlo and blocking it from moving. Lee could not recall if he turned on his car's red or amber lights, but he did shine the spotlight on the Monte Carlo. Lee saw three occupants in the Monte Carlo who proceeded to get out of the car, the defendant on the passenger side. He

called to them to stop; two of them did so. Defendant Leyba continued to walk away from the deputies across the lawn of a residence. Deputy Sheriff Flagett walked toward defendant and ordered him to stop. Defendant Leyba looked in Flagett's direction and then reached into his left pants pocket, withdrew approximately 10 to 12 tinfoil bindles and threw them to the ground. Based on his training and experience, Lee believed the bindles contained phencyclidine.

Deputy Sheriff Flagett struggled with defendant; Lee ran to aid his partner and smelled the odor of phencyclidine about defendant's breath and person. Because of defendant's uncommon strength, his incoherent speech, and his bloodshot and watery eyes, Deputy Lee concluded he was under the influence of phencyclidine and the deputies arrested him for this offense. In a search of defendant following his arrest, Deputy Lee found eight bindles and two cigarettes containing phencyclidine. The bindles defendant threw to the ground were quickly picked up by people attending a social gathering at a residence adjacent to the location of defendant's arrest; none were found by the deputies.

## SCOPE OF REVIEW

[] [A preliminary question has been raised as to the proper standard of review. Defendant contends the issue on appeal is simply whether there is substantial evidence in the record to support the trial court's ruling that the investigative stop was unlawful; if there is such evidence, the ruling is assertedly binding on this court. As will appear, the matter is not so simple.

In *People* v. *Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621], we discussed the two-step process by which a superior court rules on a motion to suppress evidence under section 1538.5, and the different standard by which an appellate court reviews each of those steps. ■ In the first step the trial court must "find the facts" relating to the challenged search or seizure: e.g., it must decide what the officer actually perceived, or knew, or believed, and what action he took in response. These are traditional questions of fact, and the statute vests the superior court with the power to decide them. (Pen. Code, § 1538.5, subd. (i).) Accordingly, we reaffirmed in *Lawler* (at p. 160) that for the purpose of finding those facts "the power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences, is vested in the trial court. On appeal all presumptions favor the exercise of that power, and the trial court's findings

on such matters, whether express or implied, must be upheld if they are supported by substantial evidence."

No less important, however, is the second step of the process. As we observed in *Lawler*, "The trial court also has the duty to decide whether, on the facts found, the search was unreasonable within the meaning of the Constitution." (*Ibid.*) Because "that issue is a question of law," the appellate court is not bound by the substantial evidence standard in reviewing the trial court's decision thereon. Rather, we explained, in such review it is "the ultimate responsibility of the appellate court to measure the facts, as found by the trier, against the constitutional standard of reasonableness." (*Ibid.*) On that issue, in short, the appellate court exercises its independent judgment.[1]

This general rule governs the particular instance of evidence obtained as a result of an investigative stop. It is now settled that "in order to justify an investigative stop or detention the circumstances known or apparent to the officer must include specific and articulable facts causing him to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person he intends to stop or detain is involved in that activity. Not only must he subjectively entertain such a suspicion, but it must be objectively reasonable for him to do so: the facts must be such as would cause any reasonable police officer in a like position, drawing when appropriate on his training and experience [citation], to suspect the same criminal activity and the same involvement by the person in question." (Fn. omitted.) (*In re Tony C.* (1978) 21 Cal.3d 888, 893 [148 Cal.Rptr. 366, 582 P.2d 957]; accord, *People v. Teresinski* (1980) 26 Cal.3d 457, 461 [162 Cal.Rptr. 44, 605 P.2d 874]; *People v. McGaughran* (1979) 25 Cal.3d 577, 588 [159 Cal.Rptr. 191, 601 P.2d 207]; *People v. Bower* (1979) 24 Cal.3d 638, 644 [156 Cal.Rptr. 856, 597 P.2d 115].)

Applying the *Lawler* rule to the foregoing analysis, we observe that the first issue to be decided, i.e., whether the officer subjectively entertained a suspicion that there was criminal activity afoot and the person he intended to stop was involved in it, is a question of fact: the officer either did or did not have that suspicion at the time he acted. Under

---

[1]Indeed, the latter is the *only* issue in the many cases in which the evidence relating to the search and seizure is undisputed. (*People v. Duren* (1973) 9 Cal.3d 218, 239 [107 Cal.Rptr. 157, 507 P.2d 1365]; *Badillo v. Superior Court* (1956) 46 Cal.2d 269, 271 [29 P.2d 23].)

*Lawler*, therefore, review of a trial court's finding on that issue is limited by the substantial evidence test.[2] But the next step in the inquiry, i.e., whether it was objectively reasonable for the officer to entertain that suspicion, is a question of law: it implicates the constitutional standard of reasonableness—a standard, as *Lawler* recognizes, that the appellate courts have the "ultimate responsibility" to administer. ■ It follows that the substantial evidence test does not limit review of this issue, and the appellate court must make an independent determination whether the officer's suspicion was constitutionally reasonable in the circumstances of the case.[3]]

## DISCUSSION

[] Having stated the applicable legal standard, we shall apply it to the facts of this case. It was 11:30 p.m.; as Deputy Sheriff Lee observed the black Monte Carlo drive northbound past the parking lot of a school located at the northeast corner of Mina and Meyer Streets, he noted that its headlights blinked on and off several times. The headlights of a light colored vehicle parked on the school parking lot then similarly blinked on and off. The light colored vehicle drove out of the school parking lot and appeared to follow the Monte Carlo northbound on Mina Street. It was this sequence of events which raised in Deputy Sheriff Lee's mind the suspicion that some criminal activity was afoot. Interrupting an investigation of a possible crime of grand theft person at the intersection of Meyer and Carmenita Streets, Deputy Lee and his partner Deputy Sheriff Flagett followed the two cars in their own. Deputy Sheriff Lee saw the Monte Carlo make a U-turn and park in front of a residence at the intersection of Monterey and Mina Streets. He stopped his car in the street, blocking the Monte Carlo, and then ordered the three occupants who were alighting from the Monte Carlo to stop. It is this initial detention of which defendant complains.[4]

---

[2]The same rule applies, of course, to the preliminary matter of determining what were "the circumstances known or apparent to the officer."

[3]Although not heretofore articulated, this has been our consistent practice. In neither *Tony C., Bower, McGaughran,* nor *Teresenski* did we give any weight whatever to the trial court's finding on whether the officer's suspicion was objectively reasonable; in each, rather, we decided that issue as a matter of law under the circumstances of the case.

[4]If the initial stop of the automobile was unlawful, then all subsequent observations of the officers and contraband secured in a search following an arrest which flows from those observations must be suppressed as more pieces of forbidden fruit from that familiar grove of poisonous trees. (*Wong Sun* v. *United States* (1963) 371 U.S. 471 [9 L.Ed.2d 444, 83 S.Ct. 407].)

Was the suspicion entertained by Deputy Sheriff Lee objectively reasonable—i.e., based on facts observed and evaluated in the light of his training and experience? Or was it at best a hunch? At the hearing, Deputy Sheriff Lee testified that the school and surrounding area were part of his regular patrol area; that no classes or other activities were being conducted and it was unusual for anyone to be on the school premises at that hour; that the area experiences a substantial amount of Mexican gang related activity and a substantial number of school burglaries (although he had no knowledge of any at that particular school). He formed the opinion that criminal activity had occurred or was about to occur through an intertwining of his observations and his knowledge of the area. The flashing of headlights represented signalling, possibly indicating an awareness of the presence of the officers. While he was not sure of the exact nature of the activity, "a strong possibility existed that a school burglary had taken place."

Defendant argues that since Deputy Lee testified he felt a "possible crime" was occurring, the detention was based on subjective curiosity or hunch; if his suspicion was something more than a hunch, it was not objectively reasonable. We disagree.

■ Because Deputy Sheriff Lee expressed some uncertainty as to the nature of the criminal activity he suspected, his suspicion is not therefore rendered objectively unreasonable. "The reasonableness of a detention does not depend on the precise words which an officer on the stand chooses to describe his state of mind at the scene . . . ." (*People* v. *Jones* (1980) 103 Cal.App.3d 885, 890 [163 Cal.Rptr. 251].)

The very notion that an ambiguity exists and requires resolution implies that an officer will not on each occasion view and be able to state exactly what is occurring. Moreover, "[t]he possibility of an innocent explanation does not deprive the officer of the capacity to entertain a reasonable suspicion of criminal conduct. Indeed, the principal function of his investigation is to resolve that very ambiguity and establish whether the activity is in fact legal or illegal—to 'enable the police to quickly determine whether they should allow the suspect to go about his business or hold him to answer charges. [Citation.]'" (*In re Tony C., supra*, 21 Cal.3d, at p. 894; see e.g., *People* v. *McNeal* (1979) 90 Cal. App.3d 830 [153 Cal.Rptr. 706]; *People* v. *Remiro* (1979) 89 Cal. App.3d 809 [153 Cal.Rptr. 89]; *People* v. *Cowman* (1963) 223 Cal. App.2d 109 [35 Cal.Rptr. 528]; *People* v. *Jones, supra*, 103 Cal.App.3d 885.)

■ Deputy Sheriff Lee has indeed articulated facts sufficient to raise a reasonable suspicion and justify the detention of the automobile and its occupants.[5] The lateness of the hour; the blinking of headlights by the two cars, one parked in a closed school, so as to indicate signalling; the following of one by the other are all facts which support Deputy Sheriff Lee's suspicions when evaluated in the light of his training and experience, and his knowledge of ongoing gang activity and the occurrence of a number of school burglaries in the area.

We conclude that the initial stop of the automobile and the detention of its occupants were lawful; the motion to suppress should not have been granted.

Because the granting of the motions to suppress and dismiss interrupted the presentation of evidence on the motion to suppress by defendant, resumption of the hearing on the motion would be appropriate so that such evidence and rebuttal thereto may be presented by the parties. [End of Court of Appeal opinion.]

The judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.

**MOSK, J.,** Dissenting.—I am in full agreement with the majority's analysis of the proper standard for appellate review of rulings on motions to suppress evidence, with particular reference to evidence obtained as a result of an investigative stop. (*Ante,* pp. 596-598.)

Applying that standard to the facts of this case, however, I dissent from the majority's conclusion that it was objectively reasonable for Officer Lee to suspect that criminal activity was afoot and this defendant was involved in it. I would therefore affirm the trial court's implied ruling to the contrary.

---

[5]We note that the defendant was seen by Deputy Sheriff Lee to remove from his pants pocket and throw to the ground some number of foil bindles as he was walking away from the officers. These bindles, in the opinion of Deputy Sheriff Lee, contained phencyclidine as it is commonly packaged. They were retrieved not by the officers but by a number of other people apparently attending a party at an adjacent residence. Since none of these foil bindles, whatever their contents or ultimate disposition (about which we do not speculate), constituted evidence which the People sought to introduce in support of the charge against the defendant, we need not concern ourselves with the contention that these bindles were discarded by the defendant in response to threatened unlawful police conduct.

Officer Lee based his decision to make the investigative stop on both the conduct of the participants and the setting in which he observed that conduct. First he stressed the fact that the two cars appeared to blink their lights at each other, then drove off one behind the other. From this conduct the officer could reasonably infer that the occupants of the cars knew each other and intended that one car would follow the other to some destination. But this inference does not support a reasonable suspicion that the occupants were therefore engaged in *criminal* activity. It is perfectly normal for persons meeting in different cars, whether by chance or prearrangement, to greet or signal each other by such means as blinking their lights, blowing their horns, or making hand motions.[1] There is little support in the record for Officer Lee's speculation that the purpose of such blinking in this case was to warn the other driver that the patrol car had been observed: he admitted that the police vehicle was parked 75 yards away from the intersection of Mina and Meyer, and that the Monte Carlo did not pass him in going to that intersection but approached it from the opposite direction. Moreover, even if the driver of the Monte Carlo had seen and recognized the patrol car at that distance in the dark and had intended to signal its presence to the other vehicle, the fact would not justify the detention. As we explained in detail in *People* v. *Bower* (1979) 24 Cal.3d 638, 647-649 [156 Cal.Rptr. 856, 597 P.2d 115], such an intrusion on personal liberty is not warranted merely because the individual behaves nervously at the approach of police officers or takes action to avoid being accosted by them: "If the right to be free from unjustified detentions is lost merely by seeking to avoid such encounters, then the right is meaningless; it would exist only to the extent it was not exercised. Such a conclusion is unacceptable." (*Id.* at p. 649.)

Nor does Officer Lee's reliance on the "high crime area" rationale reasonably transform this conduct into criminally significant activity. He testified that he was aware there had been a substantial number of nighttime burglaries of schools in the "general area"; but he also admitted he had no knowledge that any burglary had taken place at the particular school where he saw the cars blink their lights. Again, we explained at length in *Bower* (*id.* at pp. 645-646 & fn. 8) why the "high crime area" justification for investigative stops is "easily subject to abuse," and I need not repeat that analysis here. As we concluded in

---

[1]Such blinking, for example, is a widely used way of signalling in the night to another motorist that he has forgotten to turn on his headlights, or that his lights are too bright.

*Bower* (at p. 645), "this court has appraised this factor with caution and has been reluctant to conclude that a location's crime rate transforms otherwise innocent-appearing circumstances into circumstances justifying the seizure of an individual. [Citations.]" (See also *People* v. *McGaughran* (1979) 25 Cal.3d 577, 589 [159 Cal.Rptr. 191, 601 P.2d 207].) No reason to depart from this practice appears in the sweeping generalizations relied on by the police in the case at bar.

Finally, the observed conduct is not clothed with an aura of criminality merely because the officer also believed that the burglaries in the area had been committed by "Mexican gangs." He did not claim any ground to believe that the occupants of the particular cars he was observing were Mexicans, less still that they were members of a "gang." And even if he somehow had such grounds, the fact would not justify the detention: as we warned in *Bower* (24 Cal.3d at pp. 646-647), if "the alleged crime rate of an *area* is 'easily subject to abuse,' it should be obvious that one officer's perception of the criminal tendencies of a *racial group* is far more so." (Italics in original; see also *In re Tony C.* (1978) 21 Cal.3d 888, 897 [148 Cal.Rptr. 366, 582 P.2d 957].)

No other justifications for the stop and detention are asserted. Here, as in *McGaughran* (25 Cal.3d at pp. 590-591), "we have discussed the allegedly suspicious circumstances seriatim simply because we cannot discuss them simultaneously. Like the trial court, however, in determining their sufficiency we view them not in isolation but in their totality, taking account of the effect that each may have in supporting the others." Having done so, I conclude for the reasons stated that when Officer Lee acted to stop and detain defendant he did not do so on "specific and articulable facts" that could support a rational suspicion of criminal conduct. Even though the officer may well have been acting in good faith, the intrusion was based on his mere curiosity or hunch and hence was impermissible under *Tony C.* and its progeny. The motion to suppress the evidence was therefore properly granted and the action properly dismissed.

Bird, C. J., and Feinberg, J.,* concurred.

Respondent's petition for a rehearing was denied August 13, 1981. Bird, C. J., was of the opinion that the petition should be granted.

---

*Assigned by the Chairperson of the Judicial Council.