Filed 9/23/13  P. v. Guerrero CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D063263 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. JCF27264) |
| FABIAN GUERRERO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Imperial County, William D. Lehman, Judge.  Affirmed.

Stephen M. Hinkle, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Stephanie H. Chow, Deputy Attorneys General, for Plaintiff and Respondent.

Following the denial of his motion to suppress evidence under Penal Code section 1538.5, Fabian Guerrero entered a plea of no contest to possession of marijuana for sale

(Health & Saf. Code, § 11359). The remaining counts were dismissed. Guerrero was placed on probation on certain terms and conditions.

Guerrero appeals contending the trial court erred in denying his motion to suppress evidence. We find the trial court properly denied the motion to suppress and affirm the conviction.

STATEMENT OF FACTS

The facts we address here are taken from the evidentiary hearing on the motion to suppress evidence.

On November 22, 2010, Guerrero and a female passenger were stopped at a Border Patrol checkpoint on Highway 86 in Imperial County. When Agent Anderson approached the car, Guerrero immediately volunteered that they were U.S. citizens. The agent noted that Guerrero was seated in an unnatural position. He was rigid, had an extremely tight grip on the steering wheel and appeared fixated on looking at the side mirror of the car. Agent Christoffels and her dog were approaching Guerrero's car from that side and could be seen by Guerrero in the mirror.

Agent Anderson asked Guerrero if the car was his. Guerrero appeared distracted and hesitated before telling Anderson that the car was his and that he had possessed it for three months. Guerrero could not remember where he purchased the car.

Anderson asked to see the passenger's passport. The passenger had difficulty producing the passport because her hands were shaking so badly.

2

About that time, Agent Christoffels advised Agent Anderson that the dog had alerted on Guerrero's car and asked Anderson to send the car to the secondary inspection point.

Agent Christoffels testified about her duties and training as a canine handler. She testified she had been a canine handler for three years and that she had worked with this dog, Kelly, for the entire time. She testified about her training and repeated certification of both her and the dog during the past three years.

Christoffels testified that when Guerrero stopped at the secondary position he and the passenger got out of the car and sat on a bench. The agent asked Guerrero for permission to search the car and to have the dog further sniff the car. Guerrero consented to the search.

Christoffels searched the car for both humans and contraband as the dog had been trained to alert to the presence of both. The subsequent search revealed 114 pounds of marijuana hidden in a false container in the dashboard and the gas tank as well as packages found in the spare tire.

After hearing the evidence and argument of counsel the trial court found the testimony of the agents to be credible. The court found that Guerrero had voluntarily consented to the search of the car. The court denied the motion to suppress.

## DISCUSSION

Guerrero contends the trial court erred in denying his motion to suppress. Guerrero does not challenge the finding that his consent to search was voluntary. His contention is that the agents needed probable cause in order to send him to the secondary

3

position and that they did not have probable cause, thus he had been unlawfully seized at the time of his consent.

The parties disagree as to whether agents at a Border Patrol checkpoint need probable cause to refer a vehicle to the secondary position for further inquiry and, if so, whether the agents had the requisite probable cause.

First, as we will demonstrate, this case must be resolved based on plainly applicable U.S. Supreme Court precedent, particularly *United States v. Martinez-Fuerte* (1976) 428 U.S. 543 (*Martinez-Fuerte*), which approved immigration checkpoints and held that a referral to secondary for further brief questioning did not violate the Fourth Amendment.  Further, we note that the parties incorrectly use the standard of probable cause to address what, on this record is at most a temporary detention for further investigation of possible criminal activity.  (See *United States v. Brignoni-Ponce* (1975) 422 U.S. 873, 882 (*Brignoni-Ponce*); *Terry v. Ohio* (1968) 392 U.S. 1, 21.)  To the extent that some further justification was required for Agent Anderson to direct Guerrero to secondary, it would only have to establish reasonable suspicion, based on articulable facts, that criminal activity might be taking place.  (*Martinez-Fuerte*, *supra,* at p. 570.) The agents clearly had reasonable suspicion to send Guerrero to the secondary position.

Given the briefing in this case, we think it appropriate to restate a summary of the events leading up to the consent to search.

Guerrero stopped at the primary point of an established Border Patrol checkpoint. The initial stop and contact with Agent Anderson took only a minute.  As Guerrero's car pulled up to the primary station, Agent Christoffels and her dog approached the car.  The

4

dog had been trained to smell humans and drugs. While Anderson was still talking to Guerrero, Christoffels advised Anderson that the dog had alerted and requested referral to secondary. Thus the question presented is whether the combined observations of Anderson and Christoffels amounted to sufficient, articulable facts to justify further detention. We answer the question based on this record, concluding the agents had reasonable suspicion within the meaning of *Martinez-Fuerte, supra,* 428 U.S. 543; *Brignoni-Ponce, supra,* 422 U.S. 873 and *Terry v. Ohio, supra,* 392 U.S. 1 to justify further detention.

## A.  Standard of Review

When we review a decision on a motion to suppress evidence on Fourth Amendment grounds we follow an established two-step process. We first review the trial court's finding of the historical facts under the substantial evidence standard of review. Once the historical facts are established, we then exercise our independent judgment to determine if the trial court correctly applied the law to the facts. (*People v. Leyba* (1981) 29 Cal.3d 591, 596; *People v. Williams* (1988) 45 Cal.3d 1268, 1301.)

## B.  Analysis

In *Martinez-Fuerte*, *supra,* 428 U.S. 543, the court reviewed the procedures followed at the Border Patrol checkpoint permanently located at San Onofre in San Diego County. The court expressly approved of the process used at such checkpoints. At such checkpoints all cars are briefly stopped at a primary station, when the checkpoint is operating, in order for the agents to briefly question and observe the occupants of the vehicle. If the agent finds reason for further inquiry, the vehicle may be directed to a

5

secondary station "on the basis of criteria that would not sustain a roving-patrol stop." (*Id.* at p. 563; see also *Brignoni-Ponce, supra*, 422 U.S. at pp. 885-887.)

The standard for a roving patrol stop is reasonable suspicion, based upon sufficient articulable facts from which the officer, in light of his or her experience, would believe that criminal activity is taking place. (*Brignoni-Ponce, supra,* 422 U.S. at pp. 884-887.) Reasonable suspicion is that standard established in *Terry v. Ohio*, *supra,* 392 U.S. 1 at page 21, to determine whether law enforcement officers have sufficient justification to conduct a detention (a seizure which is less than an arrest) in order to investigate whether a crime is being committed.

The parties here argue at length as to whether *Martinez-Fuerte, supra,* 428 U.S. 543 authorizes referring vehicles to secondary without any particularized suspicion. We do not need to address that constitutional issue since in this case the agents clearly had reasonable suspicion to justify continued detention for investigation.

The record demonstrates that the agents collectively had reasonable suspicion based upon Guerrero's behavior, the passenger's extreme anxiety and the fact that Agent Christoffels's dog had alerted on Guerrero's car. Taken together, the agents could suspect, given their experience, that Guerrero's car contained either hidden human beings or some form of illegal drugs.

In the alternative, Guerrero argues, based on a single reference in the cross-examination of Agent Anderson that the agents were not conducting an immigration checkpoint, but rather an ordinary law enforcement effort to look for evidence of crimes. The record does not support such inference.

6

Agent Anderson acknowledged that at the checkpoints he looks for indications of immigration violations and violations of federal law. However, he made it clear he was carrying out normal Border Patrol activities addressing possible illegal immigration. Further, the canine who alerted on the car was trained to alert of humans present in a car as well as illegal substances.

Guerrero relies on *City of Indianapolis v. Edmond* (2000) 531 U.S. 32 (*Edmond*), to support his contention the agents' actions in this case were unlawful. That case does not aid Guerrero's cause.

In *Edmond*, which was a civil class action, the city had established a program of checkpoints to look for drugs. The court recognized that checkpoints had been allowed for immigration (*Martinez Fuerte*, *supra,* 427 U.S. 543), and drunk driving (*Michigan Department of State Police v. Sitz* (1990) 496 U.S. 444). The court, however, declined to authorize the use of checkpoints for general law enforcement activity. (*Edmond, supra,* 531 U.S. 32 at pp. 42-43.)

Nothing in this record supports the contention that the checkpoint in this case was being used for general law enforcement purposes. Here, Border Patrol agents were looking for illegal immigration activity as indicated by the questioning of Guerrero at the time of the initial stop. Although the dog alert could have indicated to the agents that illegal substances were in the car, it was also consistent with indicating the presence of hidden human beings in the car, a classic indication of illegal immigration activity.

Thus, we conclude the principles of *Edmond, supra,* 531 U.S. 32 have no application to this case.

7

## C. The Dog

Finally, Guerrero argues there was insufficient evidence of the reliability of the dog sniff because Guerrero was only given the records of the dog, and dog handler's certifications. He did not receive all of the records of the dog's training. Thus, he argues the dog alert did not provide the agents with probable cause. There are several problems with this contention.

First, the agents did not need probable cause, but only needed reasonable suspicion within the standard of *Terry v. Ohio, supra,* 392 U.S. 1. Further, the dog alert was only a part of the totality of information that gave the agents justification for further investigation.

The other problem with this contention is that the Supreme Court has held that on a motion to suppress evidence based in part on a dog sniff, a full, detailed examination of the dog's history and training is not necessary, even for probable cause. In *Florida v. Harris* (2013) ___ U.S. ___; 133 S.Ct. 1050, the court held requiring detailed examination of a dog's history and training is not necessary and is actually contrary to the commonsense process of evaluating the basis of probable cause. (*Id.* at p. 1057.)

It has been well established that a dog sniff is not a search. (*United States v. Place* (1983) 462 U.S. 696, 707.) Where there is a detention, but the dog sniff does not prolong an otherwise reasonable detention, no Fourth Amendment violation occurs. In *Illinois v. Caballes* (2005) 543 U.S. 405, 409-410, the police had lawfully stopped the defendant for a traffic violation. A second officer, hearing of the stop, promptly brought a dog to the scene. The dog alerted on the car and a later search ensued. The court found allowing

8

the dog to sniff an otherwise lawfully stopped vehicle did not constitute an unlawful search.

In this case it is undisputed that Guerrero's car was lawfully stopped at the primary position at the checkpoint. Christoffels and her dog immediately approached the stopped car and the dog alerted. Guerrero's detention was not unduly prolonged nor was there an unlawful search of the car at that time.

It must be remembered that the actual search was the result of a voluntary consent, which is not challenged on its merits in this appeal. Since the agents' actions leading up to the consent were lawful, there is no basis for suppression of the evidence seized in the search.

## DISPOSITION

The judgment is affirmed.

HUFFMAN, Acting P. J.

WE CONCUR:

AARON, J.

IRION, J.

9