Filed 5/15/14  P. v. Roberts CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### COURT OF APPEAL, FOURTH APPELLATE DISTRICT

### DIVISION ONE

### STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D064542 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCE323459) |
| GARY WAYNE ROBERTS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, John M. Thompson and Patricia K. Cookson, Judges.  Affirmed and remanded.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Robin Urbanski and Alastair J. Agcaoili, Deputy Attorneys General, for Plaintiff and Respondent.

Following the denial of his motion to suppress evidence under Penal Code section 1538.5, Gary Wayne Roberts entered a guilty plea to one count of possession of a

controlled substance for sale (Health & Saf. Code, § 11378).  The court sentenced Roberts to a determinate term of 16 months in prison.  The court stayed the execution of the sentence pending appeal.  Roberts filed a timely notice of appeal.

STATEMENT OF FACTS

Since this appeal challenges only the denial of the motion to suppress evidence, we will summarize the facts from the transcript of the hearing on that motion.

At approximately 10:19 p.m. on August 24, 2012, an El Cajon police officer observed Roberts walking eastbound on Main Street in the City of El Cajon.  The officer, who was in uniform and driving a marked patrol car, made a u-turn so that he could contact Roberts.  The officer parked his car about 30 to 50 feet from Roberts, who continued to walk toward the officer.  The officer did not use the car's spotlight or emergency lights.

As Roberts walked toward the officer's position, the officer got out of his car. When Roberts was about 5 to 10 feet from the officer, the officer said, "What is up man?" and "Do you mind talking to me."   Roberts responded, "Sure what is going on."  The officer responded, "Nothing much, just doing my job out here.  Just talking to people." He then asked Roberts, "Do you mind if I check your identification out?"  Roberts said, "Sure" and handed his driver's license to the officer.  The officer testified that this conversation was calm, and that he did not make any commands or block or restrain Roberts in any fashion.

2

The officer wanted to conduct a record check on Roberts and asked Roberts if he "wouldn't mind having a seat on the curb" while he conducted the record check. Roberts sat on the curb while the record check was conducted.

The record check revealed that Roberts was on probation and subject to a Fourth Amendment waiver. When Roberts was informed of the results of the record check he became nervous and angry and denied he was the subject of a "Fourth waiver." Police reconfirmed the waiver information with the dispatcher three or four times. Thereafter Roberts was searched and a quantity of drugs and counterfeit bills were found on his person.

Roberts testified at the suppression hearing. He said the officer rushed up to him and in a stern voice asked to speak to him and asked for his identification. Roberts said the officer shined the patrol car spotlight on him as he approached and that the officer used a flashlight during the encounter.

At the close of the hearing the court determined the officer's testimony was truthful, that the encounter was consensual and that although the officer did use his flashlight during the encounter, Roberts was not detained until after the police learned of his Fourth waiver.

## DISCUSSION

### A. Standard of Review

When we review a trial court's decision on a motion to suppress evidence we follow an established two-step process. First we review the historical facts found by the trial court under the substantial evidence standard of review. Once we have determined

3

the trial court's factual findings are supported in the record, we independently determine if, in light of those facts, the trial court properly applied the law to the facts. (*People v. Ayala* (2000) 23 Cal.4th 225, 255; *People v. Leyba* (1981) 29 Cal.3d 591, 596-597.)

B. Analysis

The question presented in this case is when was Roberts seized by police. If he was seized upon the officer's initial encounter then arguably the later discovery of his "Fourth waiver" would be the product of an unlawful detention. Thus we must determine the point at which Roberts was first seized.

A seizure within the meaning of the Fourth Amendment occurs when a law enforcement officer restrains a person's liberty by means of physical force or a show of authority. (*People v. Zamudio* (2008) 43 Cal.4th 327, 341.) We examine the officer's action under an objective standard to determine whether a reasonable person, under the circumstances, would feel free to leave or to discontinue the contact with police. (*Ibid.*)

Not all encounters with police amount to seizures, some may be described as consensual, that is, the person contacted has not yet been restrained in his or her liberty. In *People v. Bouser* (1994) 26 Cal.App.4th 1280, 1282, police encountered the defendant. Much like this case, the officers said, "Hey, how are you doing? You mind if we talk?" The defendant stopped and talked with police for several minutes. Police asked for identification and did a record check which, in turn, revealed an outstanding arrest warrant. The court affirmed the trial court's decision denying a motion to suppress, finding the encounter was consensual up to the point that police discovered the outstanding warrant. (*Id.* at pp. 1287-1288.)

4

In *Florida v. Bostick* (1991) 501 U.S. 429, 439, the court said, "[I]n order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." (*California v. Hodari D.* (1991) 499 U.S. 621, 628; *U.S. v. Mendenhall* (1980) 446 U.S. 544, 554.)

The undisputed evidence at the suppression hearing was that the officer did not block Roberts's movements, make any commands or in any way physically restrain him. The trial court credited the officer's testimony about the calm, low key nature of the encounter and the fact that Roberts agreed to cooperate with the officer, including sitting down while the officer did a record check. Given Roberts's reaction to the finding of the probation condition, it would appear Roberts thought he was not on probation, had no concerns about a record check, and was willing to participate in the process.

It is clear from this record that the trial court properly found the encounter between Roberts and the officer was consensual and that Roberts was not seized until after police learned about the waiver of Fourth Amendment rights. Roberts does not challenge the validity of that probation condition. Thus, the search that followed the discovery of the condition was valid and not the product of an unlawful seizure.

Given our conclusion that the police conduct in this case was objectively reasonable, we decline to consider the People's contention that the exclusionary rule should not be applicable to this case even if police erred in the initial contact with Roberts.

5

## DISPOSITION

The judgment is affirmed.  The case is remanded to the trial court to execute the sentence which was stayed pending appeal.

_____

HUFFMAN, Acting P. J.

WE CONCUR:


_____

NARES, J.


_____

HALLER, J.