Filed 1/30/23 P. v. Lyle CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C095597 |
| Plaintiff and Respondent, | (Super. Ct. No. 20FE016122) |
| v. | |
| TREVON LYLE, | |
| Defendant and Appellant. | |

After the trial court denied his motion to suppress evidence, defendant Trevon Lyle pled no contest to carrying a concealed handgun, and the trial court suspended imposition of his sentence and placed him on probation. Defendant contends the trial court erred by denying his motion to suppress evidence for three reasons: (1) when police officers placed him in handcuffs immediately after detaining him, they made a de facto arrest without probable cause; (2) police lacked reasonable suspicion defendant was involved in criminal activity to justify detaining him; and (3) police lacked reasonable

1

suspicion defendant was armed and dangerous to justify a pat-down search. We disagree and will affirm the judgment.

## I. BACKGROUND

The prosecution charged defendant with the felony offense of carrying a concealed, loaded, unregistered firearm (Pen. Code, § 25400, subds. (a)(2), (c)(6)).[1] At the preliminary examination, officers from the Sacramento Police Department testified about the circumstances that led to defendant's arrest.

Around 7:45 p.m., Officers Christopher Jensen and Chase Cunningham drove through a shopping center parking lot known for gang activity, illegal drug sales, and shootings. The officers were wearing their uniforms and driving a black, unmarked police SUV. Despite the lack of markings, Officer Cunningham believed the large metal bumper enhancement, the emergency lights across the front, the spotlights on the side, and the exempt license plates made obvious that the SUV belonged to the police. The officers observed a group of 10-15 people standing on the sidewalk in front of a liquor store who all appeared to notice and react to the officers driving past. Defendant, in particular, saw the officers and immediately turned away and started walking away, but in a way indicating he did not know where he was going.

Because of the size of the suspicious group in front of the liquor store, Officers Cunningham and Jensen requested additional officers to help monitor the group. Sergeant Zach Eaton drove to the shopping center in plain clothes and in an unmarked police car and parked where he would have a clear view of the group. Sergeant Eaton knew at least three different gangs that frequented that parking lot, and his team had arrested gang members for illegal drug sales and illegal weapon possession in the parking

---

[1] Undesignated statutory references are to the Penal Code.

lot. His team had also dealt with two or three shootings in the parking lot within the past year.

Sergeant Eaton saw defendant in a group of at least five people loitering in front of a pizza restaurant and liquor store in the shopping center. Cars drove into the parking lot and made contact with this group of people, stayed for a few minutes, and then left without visiting any of the stores in the shopping center. Sergeant Eaton recognized this behavior as indicative of illegal marijuana and narcotics sales. He saw defendant approach the front passenger window of one car, which stayed in the parking lot for five minutes or less. Defendant leaned into the open window for 10 or 20 seconds. Based on these observations, Sergeant Eaton concluded that defendant was either making an illegal drug sale or the people in the car were supplying defendant with illegal drugs. Sergeant Eaton relayed to Officer Cunningham and Officer Jensen that cars were stopping in the parking lot for short periods of time with the drivers not visiting any businesses and, specifically, that defendant had leaned in the passenger window of one such car.

Based on what they knew about the parking lot and defendant's interaction with the car, Officer Cunningham concluded defendant was likely involved in illegal drug sales. Officers Cunningham and Jensen then pulled their car up near defendant, and Officer Cunningham approached defendant while Officer Jensen approached K.W., who was standing with defendant. The officers had interacted with K.W. before in that parking lot when investigating illegal drug sales and knew K.W. was on probation.

Officer Cunningham had defendant put his hands behind his back and planned to quickly get handcuffs on him. Officer Jensen told K.W. to sit on the curb and then quickly went to help Officer Cunningham with defendant. The officers expected defendant to have a gun in the satchel he was wearing across his chest because people involved in illegal drug sales often carry firearms. Several shootings had recently occurred in that parking lot; they had recently arrested more people than usual for carrying illegal guns in that parking lot; and they had found guns inside satchels worn

3

across the chest more than 50 times over the past year and a half and several times per week for the past several months, indicating a trend. When Officer Jensen approached defendant, the satchel appeared to be holding a heavy L-shaped object. Officer Jensen immediately patted the satchel and felt a gun.

Officer Jensen told Officer Cunningham to handcuff defendant because he had a gun, and Officer Cunningham handcuffed defendant. When Officer Jensen opened the satchel, he found a loaded gun that appeared operable.

The trial court denied defendant's motion to suppress the gun. The court noted the context: a high crime area where people carried illegal guns and where criminal activity had recently increased. The officers had seen activity consistent with illegal drug sales and had specifically seen defendant engage in what he believed was drug sales. Based on the officer's experience, they reasonably expected defendant to be carrying a gun in his satchel. The trial court also found that the officers did not arrest defendant until the pat-down search revealed the gun in defendant's satchel. Accordingly, the trial court denied defendant's motion, held defendant to answer for the charged offense, and deemed the complaint to be an information.

Defendant then filed a motion to dismiss the information pursuant to section 995, which the trial court denied. Following the denial, defendant agreed to plead no contest to the misdemeanor offense of carrying a concealed firearm (§ 25400, subd. (a)(2)), and the trial court suspended imposition of sentence and placed defendant on informal probation for one year. Defendant timely appealed to the Appellate Division of the Superior Court, which concluded it lacked jurisdiction over the appeal and directed the clerk to send the notice of appeal to this court. (See Cal. Rules of Court, rule 8.304(a)(2).)

## II. DISCUSSION

Defendant contends the trial court should have granted his motion to suppress the gun found in his satchel because the officers placing him in handcuffs, detaining him, and

patting down his satchel violated the Fourth Amendment to the United States Constitution. We disagree.

The Fourth Amendment protects against unreasonable searches and seizures. (U.S. Const., 4th Amend.; *Terry v. Ohio* (1968) 392 U.S. 1.) "[T]hat Amendment's proscriptions are enforced against the States through the Fourteenth Amendment," applying the same standards of reasonableness. (See also *Ker v. California* (1963) 374 U.S. 23, 33.) "The United States Supreme Court has interpreted the Fourth Amendment as requiring state and federal courts to exclude evidence that government officials obtained in violation of the amendment's protections." (*People v. Williams* (1999) 20 Cal.4th 119, 125.) "One of those protections is that a government official must obtain a warrant from a judicial officer before conducting a search or seizure." (*Ibid.*) "The prosecution has the burden of proving a justification for a warrantless search or seizure." (*Id.* at pp. 136-137.)

"In reviewing the trial court's denial of a motion to suppress evidence, we view the record in the light most favorable to the trial court's ruling, deferring to those express or implied findings of fact supported by substantial evidence. [Citations.] We independently review the trial court's application of the law to the facts." (*People v. Jenkins* (2000) 22 Cal.4th 900, 969.)

A.     *Arrest*

Defendant argues that the officers immediately handcuffed him, which amounted to a "de facto arrest requiring probable cause," but lacked probable cause to justify the warrantless arrest. The parties do not dispute the officers seized defendant, but do dispute whether the seizure amounted to a brief investigative detention or an arrest.

This dispute matters because, "[w]hen the seizure of a person amounts to an arrest, it must be supported by an arrest warrant or by probable cause." (*People v. Celis* (2004) 33 Cal.4th 667, 673.) "Probable cause is shown 'when the facts known to the arresting officer would persuade someone of "reasonable caution" that the person to be arrested

5

has committed a crime.' " (*People v. Zaragoza* (2016) 1 Cal.5th 21, 57.) " '[T]here is no hard and fast line to distinguish permissible investigative detentions from impermissible de facto arrests. Instead, the issue is decided on the facts of each case, with focus on whether the police diligently pursued a means of investigation reasonably designed to dispel or confirm their suspicions quickly, using the least intrusive means reasonably available under the circumstances.' " (*Celis, supra,* at pp. 674-675.) For example, stopping a suspect at gunpoint, handcuffing him, and making him sit on the ground for a few minutes while officers investigate potential nearby threats do not necessarily convert a detention into an arrest. (*Id.* at pp. 675-676; see *id.* at p. 675 [citing additional cases].)

Here, not only did the officers have probable cause to arrest defendant by the time they handcuffed him, but the detention prior to the use of handcuffs was brief and immediately directed at confirming their suspicion that defendant had a gun in his satchel to constitute an arrest. Substantial evidence supports the trial court's finding that Officer Jensen determined defendant had concealed a gun in his satchel before Officer Cunningham handcuffed defendant. After he felt the satchel, Officer Jensen then told Officer Cunningham, " 'Cuff him. There's a gun,' " and held defendant's arm while Officer Cunningham handcuffed defendant. This means that at the time they handcuffed him the officers had probable cause to arrest defendant for carrying a concealed firearm. To the extent defendant objects to Officer Cunningham putting defendant's hands behind his back in preparation for placing him in handcuffs, we conclude these actions did not transform a detention into a de facto arrest. The entire detention prior to Officer Jensen locating the gun lasted less than 30 seconds. The detention occurred at night in an area known for drug crime and a recent surge in gang-related gun violence, amidst a crowd of defendant's companions. Defendant reacted suspiciously when he saw the officers driving through the parking lot. Sergeant Eaton had witnessed defendant engage in what appeared to be a drug transaction and told the other two officers about his observations. And defendant wore a satchel on his chest, a recent trend the officers had observed that

6

often indicated a person was concealing a gun. In these circumstances, Officer Cunningham beginning to handcuff defendant while Officer Jensen felt defendant's satchel demonstrated a diligent investigation reasonably designed to dispel or confirm their suspicions quickly, using the least intrusive means reasonably available. We conclude the officers' conduct prior to arresting defendant was not a de facto arrest.

B.     *Detention*

Defendant also contends that, even if the officers merely detained him initially, they lacked reasonable suspicion defendant was involved in criminal activity to justify that detention. We disagree.

"A 'brief, investigatory stop' is justified where an officer has 'reasonable, articulable suspicion that criminal activity is afoot,' implicating the suspect." (*Cornell v. City and County of San Francisco* (2017) 17 Cal.App.5th 766, 779-780.) "While the more demanding standard of probable cause requires a basis to suspect someone of having committed a particular crime, reasonable suspicion to detain only requires facts connecting the suspect to 'criminal activity' more generally." (*Id.* at p. 780.) "Because it is a 'less demanding' standard, 'reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause.' " (*Kansas v. Glover* (2020) ___U.S.___ [206 L.Ed.2d 412, 419].)

The relevant contextual circumstances officers can consider when forming reasonable suspicion a person is involved in criminal activity include "the fact that the stop occurred in a 'high crime area' " (*Illinois v. Wardlow* (2000) 528 U.S. 119, 124), their knowledge of gang activity in the area (*People v. Leyba* (1981) 29 Cal.3d 591, 600), the time of day (*People v. Souza* (1994) 9 Cal.4th 224, 241), and the detainee's nervous, evasive behavior upon seeing officers (*Florida v. Rodriguez* (1984) 469 U.S. 1, 6).

Here, substantial evidence establishes that Sergeant Eaton had witnessed defendant engage in an apparent drug transaction; the detention occurred at night in an area known for drug crime and a recent surge in gang-related gun violence; defendant

7

reacted suspiciously when he saw the officers driving through the parking lot; and defendant wore a satchel on his chest in conformance with a recent trend for concealing guns. In these circumstances, we conclude the officers had a reasonable articulable suspicion defendant was involved in criminal activity, justifying their brief investigatory stop.

## C.     Pat-Down Search

Finally, defendant contends the pat-down search during his detention violated the Fourth Amendment because the officers lacked a reasonable belief defendant was armed and dangerous. Once again, we disagree.

" '[I]t is a cardinal principle that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." ' " (*People v. Ovieda* (2019) 7 Cal.5th 1034, 1041.) One such exception is "a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." (*Terry v. Ohio, supra*, 392 U.S. at p. 27.) To justify a *Terry* search, "[t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." (*Ibid.*) Such a search must "be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." (*Id.* at p. 29.)

Here, substantial evidence establishes that the officers had sufficient reason to believe defendant had a gun in the satchel he was wearing across his chest. First, people involved in illegal drug sales often carry firearms. Second, several shootings had recently occurred in that parking lot. Third, the officers had recently arrested more people than usual for carrying illegal guns in that parking lot. Fourth, the officers had

8

found guns inside satchels worn across the chest more than 50 times over the past year and a half and several times per week for the past several months. Officer Cunningham had searched approximately 75 similar satchels worn across the chest when investigating criminal activity in that area in the past year and a half, and about 50 of them contained guns. Officer Jensen had found guns inside such satchels multiple times per week for the past six months. Because of these suspicions, Officer Jensen felt defendant's satchel immediately upon approaching him, less than 30 seconds after Officer Cunningham approached and began detaining defendant.

In these circumstances, we conclude the officers had a reasonable apprehension of danger and the resulting pat-down search was reasonably designed to discover weapons that could harm the officers. We conclude this search was reasonable under the Fourth Amendment.

### III. DISPOSITION

The judgment is affirmed.

/S/

RENNER, Acting P. J.

We concur:

/S/

EARL, J.

/S/

HOCH, J.[*]

___

[*] Retired Associate Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9