Filed 2/18/16  P. v. Laszlo CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>LASZLO LASZLO, JR.,<br><br>    Defendant and Appellant. | F070102<br><br>(Super. Ct. No. BF152741A)<br><br>**OPINION** |

-ooOoo-

### THE COURT[*]

APPEAL from an order of the Superior Court of Kern County.  Michael B. Lewis, Judge.

Tutti Hacking, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Stephen G. Herndon and Harry Joseph Colombo, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Levy, Acting P.J., Gomes, J. and Peña, J.

After the trial court denied his motion to suppress evidence, defendant Laszlo Laszlo, Jr., pled no contest to possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)).  The court granted him three years' probation.  On appeal, he contends the court erred in denying the motion to suppress because (1) his consent to the search of his person was coerced by the deputy's threat to arrest and search him, and (2) there was insufficient evidence that the deputy intended to or legally could have arrested him for driving with an expired license because he was driving in a private parking lot.  We affirm.

## BACKGROUND

*I.*     *Evidence*

At the suppression hearing, the parties stipulated that a search, seizure, or detention was accomplished without a search warrant or arrest warrant.

**Prosecution Evidence**

Deputy Patrick Klawitter testified that on January 4, 2014, at about 6:22 p.m., he noticed a vehicle driving in the parking lot of the Vagabond Inn with no illumination on the rear license plate in violation of the Vehicle Code.  Deputy Klawitter initiated a traffic stop.  He contacted defendant, who was the driver, and asked if he could search him.  Defendant said he could not.  After 15 to 30 seconds, and without further comment by Deputy Klawitter, defendant turned around, placed his hands on top of his head, and told Deputy Klawitter to go ahead.

Deputy Klawitter testified he was alone, did not pull out his gun, and did not threaten to handcuff defendant.  When Deputy Klawitter searched defendant's person, he found a small plastic bag containing methamphetamine in defendant's right front coin pocket.

On cross-examination, Deputy Klawitter testified that during those 15 to 30 seconds, he and defendant engaged in casual conversation until defendant turned

2

around and consented to the search. The casual conversation included Deputy Klawitter's asking defendant what he was doing there and defendant's saying he was staying in one of the rooms.

**Defense Evidence**

Defendant testified he was outside of his car and had already turned the car off about 20 seconds before Deputy Klawitter turned on his lights. Deputy Klawitter approached and asked defendant what he was doing there. Defendant responded. Then Deputy Klawitter said, "[Y]ou don't mind if I search you." Defendant said, "[Y]eah, actually I do. No reason to search me. I know my rights." Deputy Klawitter asked again and defendant refused again. Deputy Klawitter said, "[W]ell, I could just be an a-hole and arrest you for driving on an expired license and have your car impounded." At that point, defendant said, "[W]ell, do what you got to do," and he turned around and let Deputy Klawitter search him.

On cross-examination, defendant admitted he was driving on an expired license. He denied knowing or seeing what Deputy Klawitter found in his pocket during the search, even though the object was in his own pocket. He had never seen it before. He had heard of methamphetamine, but he had never seen, possessed, or used it.

**Rebuttal Evidence**

On rebuttal, Deputy Klawitter testified that he was driving around the Vagabond Inn parking lot when he saw a car driving in the parking lot with its rear license plate lamp out. Deputy Klawitter pulled up behind the car and activated his forward facing red light to initiate a traffic stop. Deputy Klawitter explained, "I activated my light. The vehicle pulled in the parking lot—the north parking lot of the hotel. [Defendant] got out, closed the door and was standing next to the vehicle." Deputy Klawitter approached and explained why he was stopping him. As they talked, defendant told Deputy Klawitter his license was either suspended or expired. Deputy Klawitter told him that technically he could arrest him immediately for that reason and search him. He asked defendant if he

3

had anything illegal on him. Defendant said he did not. When Deputy Klawitter asked to search him, he refused. Then Deputy Klawitter told him, "[W]ell, sir, due to the fact you have either a suspended or expired driver's license, I can technically arrest you and then search you incident to [the] arrest." They talked further, engaging in the casual conversation to which Deputy Klawitter had referred. Then defendant turned around and said, "[G]o ahead," and gave him consent to search.

## II. *Argument*

Following presentation of this evidence, the prosecutor argued:

> "Thank you, your Honor. I don't believe that there is much to speak on with the Vehicle Code violation. The deputy pulled up and saw a Vehicle Code violation, stopped the defendant.

> "As to the consensual search, it seems very clear that the deputy initially asked the defendant and the defendant's initial answer was, in fact, no.

> "The deputy did state the fact, then, that at this point in time, he could, in fact, place the defendant under arrest for driving with an expired license, which he could, and do a search incident to arrest; but that—at that point didn't seem the deputy was going to act on that.

> "He began having a casual conversation with the defendant, asked where he was staying, what he was up to. No showing of force, no guns pulled, no handcuffs pulled out, no officers showed up at the scene at that time.

> "And then, after the casual conversation, the defendant it seemed like had a change of heart, turned around and said go ahead, and placed his hands on his head and in a search position.

> "Given the break in time from the initial asking for consent stating that he could be searched any way and then continuing on with just a conversation, it seems to me that this was a voluntary consent.

> "Based on the way the testimony came out, even if your Honor does not believe that it was voluntary, I would argue that it's inevitable discovery due to the fact that the deputy could, in fact, place the defendant

4

under arrest on what he had already known search incident to arrest. So the search would have happened whether or not the defendant gave consent."

Next, defense counsel argued:

"Your Honor, consensual search must be freely and voluntarily given. [¶] This is a situation where Deputy Klawitter essentially browbeat [defendant] into agreeing to a search, essentially threatening to impound his vehicle. [¶] As to whether or not Deputy Klawitter could have eventually searched [defendant] should he have decided to arrest him I think is really irrelevant. What happened in this particular situation he forced consent by threatening [defendant]. [¶] I would submit on that."

### III. Trial Court's Ruling

The court then stated the following:

"The Supreme Court has taken search incident to arrest to the extent that if the officer had arrested [defendant] for even a minor traffic violation that he would have been justified in searching.

"But to assume that because he had a minor traffic violation that the officer was going to arrest or—and then subsequently search is not based on any of the evidence presented to the court.

"But the coercive—the statements made to [defendant] in that 15- to 30-second period while may have had some coercive intent, that short period of discussion under those circumstances with one officer even late at night or even at 6:00 p.m. at night is insufficient for [the] court to find that the subsequent consent was not freely and voluntarily given.

"I will deny the motion to suppress …."

### DISCUSSION

### I. Law

The Fourth Amendment guarantees the right to be free of unreasonable searches and seizures by law enforcement personnel. A warrantless search or seizure is presumed to be unlawful. (U.S. Const., 4th Amend.; *Mincey v. Arizona* (1978) 437 U.S. 385, 390.) "The prosecution always has the burden of justifying the search [or seizure] by proving [it] fell within a recognized exception to the warrant requirement." (*People v. Williams* (2006) 145 Cal.App.4th 756, 761.) "It is 'well settled that one of the specifically

5

established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent.'" (*People v. Woods* (1999) 21 Cal.4th 668, 674.) A search conducted pursuant to consent "is a constitutionally permissible and wholly legitimate aspect of effective police activity." (*Schneckloth v. Bustamonte* (1973) 412 U.S. 218, 228 (*Schneckloth*).)

To be valid, the consent to search must be freely and voluntarily given. (*Florida v. Royer* (1983) 460 U.S. 491, 497; *People v. Boyer* (2006) 38 Cal.4th 412, 445 (*Boyer*).) Voluntariness is a question of fact to be determined from the totality of circumstances. (*Schneckloth, supra,* 412 U.S. at p. 227*; Boyer, supra,* at p. 445; *People v. Rupar* (1966) 244 Cal.App.2d 292, 298.) "If the validity of a consent is challenged, the prosecution must prove it was freely and voluntarily given—i.e., 'that it was [not] coerced by threats or force, or granted only in submission to a claim of lawful authority.'" (*Boyer, supra,* at p. 446, citing *Schneckloth, supra,* at p. 233.)

When we review a trial court's ruling on a suppression motion pursuant to Penal Code section 1538.5, "[w]e view the record in the light most favorable to the trial court's ruling, deferring to those express or implied findings of fact supported by substantial evidence," including findings on the issue of consent. (*People v. Jenkins* (2000) 22 Cal.4th 900, 969; *People v. Miller* (1999) 69 Cal.App.4th 190, 202-203.) "Trial courts may accept an officer's testimony that [the] defendant freely consented to the search even in the face of conflicting testimony from defense witnesses." (*People v. Miller, supra,* at p. 203.) In determining whether the search or seizure was reasonable under the Fourth Amendment, based on those supported factual findings, we exercise our independent judgment. (*People v. Jenkins, supra,* at p. 969.)

## II. *Analysis*

Defendant contends Deputy Klawitter coerced his consent by threatening to arrest him for driving on an expired driver's license and search him incident to that arrest. Defendant argues the circumstances were inherently coercive. He says the undisputed

6

facts show he was influenced by Deputy Klawitter's threat to arrest and search him, and thus his consent was merely a submission to an assertion of authority.

The People respond that the record supports the trial court's finding that defendant's consent was not coerced. Furthermore, Deputy Klawitter had probable cause to arrest defendant for two separate traffic violations—having a defective rear license plate lamp (Veh. Code, § 24601) and driving without a valid driver's license (Veh. Code, § 12500).

The trial court found that the circumstances did not coerce defendant to consent to the search and that he freely and voluntarily consented. The facts supported by substantial evidence and viewed in the light most favorable to that ruling indicated that Deputy Klawitter initiated a traffic stop based on a nonfunctioning rear license plate lamp. After defendant refused to consent to a search, he and Deputy Klawitter continued to converse casually for 15 to 30 seconds. During this time, defendant told Deputy Klawitter he was driving on an expired driver's license. Deputy Klawitter told him he could just arrest him for that offense and search him pursuant to the arrest. As they talked, defendant turned around, put his hands on his head, and agreed to the search. At no time did Deputy Klawitter, who was alone, make a show of force by drawing a weapon or threatening to handcuff defendant.

It is settled that a search incident to a lawful arrest is an established exception to the Fourth Amendment requirement for a warrant. (*People v. Diaz* (2011) 51 Cal.4th 84, 90.) Regardless of the offense for which the arrest is made, an officer may always thoroughly search a defendant incident to an arrest when the defendant is taken into lawful custody. (*U.S. v. Robinson* (1973) 414 U.S. 218, 234-236; *Gustafson v. Florida* (1973) 414 U.S. 260, 263-266; *People v. Monroe* (1993) 12 Cal.App.4th 1174, 1195.) Even a minor criminal offense punishable by a fine, such as a traffic offense, can support a custodial arrest and a search incident to that arrest. (*Atwater v. Lago Vista* (2001) 532 U.S. 318, 323, 339-345; *People v. McKay* (2002) 27 Cal.4th 601, 606-619; see *People v.*

7

*Redd* (2010) 48 Cal.4th 691, 721 [during traffic stop, officers were entitled to arrest defendant and search him incident to that arrest when he failed to provide valid registration to officers and gave a false name in violation of Veh. Code].) Accordingly, when an officer arrests a defendant for driving without a valid driver's license, the officer may search him incident to that arrest. (*U.S. v. Robinson, supra,* at p. 224 [upon custodial arrest for driving on revoked driver's license, officer was entitled to search a defendant incident to arrest, inspect crumpled cigarette pack, and seize heroin capsules]; *Gustafson v. Florida, supra,* at p. 266 [upon custodial arrest for driving vehicle without possession of a valid driver's license, officer was entitled to search defendant incident to arrest, inspect box of cigarettes found in defendant's pocket, and seize homemade cigarettes the officer believed contained marijuana].)

Deputy Klawitter, therefore, was legally entitled to arrest defendant for driving without a valid driver's license and then search him incident to that arrest.[1] Furthermore, Deputy Klawitter was entitled to inform defendant of that possibility without necessarily coercing his consent with an assertion of authority. In other words, Deputy Klawitter's statement that he could arrest and search defendant was not inherently coercive. Deputy Klawitter did not threaten to do anything other than what he had a legal right to do. (*People v. Rupar, supra,* 244 Cal.App.2d at p. 298 [consent not coerced where officers told defendant they could wait for a search warrant; defendant realized officers could search by legal means without her consent; "no threat of the officers' doing anything other than what they had a legal right to do"]; *People v. Ward* (1972) 27 Cal.App.3d 218, 224 [consent not coerced where officer told handcuffed defendant if he did not consent to search of house, police would have to apply for and possibly get a search warrant, which would involve a wait]; *People v. McClure* (1974) 39 Cal.App.3d 64, 69-70 [consent not

---

[1] Defendant did not dispute this in the trial court although he argued the issue was irrelevant. (See *infra.*)

8

coerced where officers offered defendant a choice of consenting to a search or waiting until they obtained a search warrant; fact that officers stated they would obtain a search warrant did not vitiate defendant's consent to search, since this statement threatened nothing more than what the officers had a legal right to do].) Because substantial evidence supported the finding that the totality of the circumstances, including Deputy Klawitter's statement, were not coercive, the trial court did not err in denying the motion to suppress.

For the first time on appeal, however, defendant asserts that the prosecution failed to present sufficient evidence that Deputy Klawitter could have legally arrested him for driving on an expired license. He argues that Deputy Klawitter only observed him driving without a license in a private parking lot, not on a street. We conclude defendant has forfeited this claim by failing to raise it below.

In *People v. Williams* (1999) 20 Cal.4th 119, the Supreme Court explained that defendants moving to suppress evidence under Penal Code section 1538.5 "must inform the prosecution and the court of the specific basis for their motion. [¶] … [¶] [W]hen the basis of a motion to suppress is a warrantless search or seizure, the requisite specificity is generally satisfied, *in the first instance,* if defendants simply assert the absence of a warrant and make a prima facie showing to support that assertion. Of course, if defendants have a specific argument *other than the lack of a warrant* as to why a warrantless search or seizure was unreasonable, they must specify that argument as part of their motion to suppress and give the prosecution an opportunity to offer evidence on the point. [Citation.] For example, defendants who believe the police failed to comply with the knock-notice requirement of Penal Code section 844 cannot simply bring a motion to suppress alleging a warrantless search or seizure and then wait until the appeal to raise the knock-notice issue. Rather, defendants must specify the knock-notice issue in the course of the trial court proceeding. [Citations.]

9

"Moreover, once the prosecution has offered a justification for a warrantless search or seizure, defendants must present any arguments as to why that justification is inadequate. [Citation.] Otherwise, defendants would not meet their burden under [Penal Code] section 1538.5 of specifying why the search or seizure without a warrant was 'unreasonable.' This specificity requirement does not place the burden of proof on defendants. [Citation.] As noted, the burden of raising an issue is distinct from the burden of proof. The prosecution retains the burden of proving that the warrantless search or seizure was reasonable under the circumstances. [Citations.] But, if defendants detect a critical gap in the prosecution's proof or a flaw in its legal analysis, they must object on that basis to admission of the evidence or risk forfeiting the issue on appeal.

"In sum, we conclude that under [Penal Code] section 1538.5, as in the case of any other motion, defendants must specify the precise grounds for suppression of the evidence in question, and, where a warrantless search or seizure is the basis for the motion, this burden includes specifying the inadequacy of any justifications for the search or seizure. In the interest of efficiency, however, defendants need not guess what justifications the prosecution will argue. Instead, they can wait for the prosecution to present a justification. Moreover, in specifying the inadequacy of the prosecution's justifications, defendants do not have to help the prosecution step-by-step to make its case. The degree of specificity that is appropriate will depend on the legal issue the defendant is raising and the surrounding circumstances. Defendants need only be specific enough to give the prosecution and the court reasonable notice. Defendants cannot, however, lay a trap for the prosecution by remaining completely silent until the appeal about issues the prosecution may have overlooked." (*People v. Williams, supra,* 20 Cal.4th at pp. 129-131.)

Here, defendant's motion to suppress simply asserted that a warrantless search and seizure occurred. In response, the prosecution opposed the motion on the ground that defendant validly consented to the search. At the suppression hearing, the prosecutor

argued that Deputy Klawitter could have arrested defendant for driving with an expired license and then could have searched him incident to the arrest.  In response, defendant argued that Deputy Klawitter threatened him and coerced his consent, but he did *not* argue that Deputy Klawitter could not have legally arrested him.  As a result, the prosecution did not receive notice of this argument and did not have the opportunity to develop the legal and factual issues, such as whether Deputy Klawitter observed defendant driving on the street before he entered the parking lot.  By failing to address the issue below, he has forfeited it here.[2]

In sum, substantial evidence supported the trial court's conclusion that defendant freely and voluntarily consented to the search of his person.  The court did not err in denying the motion to suppress.

### DISPOSITION

The order denying the motion to suppress is affirmed.

---

[2]     Defendant also argues on appeal that the prosecution failed to present sufficient evidence that Deputy Klawitter was going to (i.e. intended to) arrest defendant.  But Deputy Klawitter's subjective intentions are not relevant to our consideration.  For example, in *Whren v. U.S.* (1996) 517 U.S. 806, the United States Supreme Court rejected "any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved."  (*Id.* at p. 813.)  The court concluded:  "Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."  (*Ibid.*)  In *People v. Bradford* (1997) 15 Cal.4th 1229, our Supreme Court noted that "the [United States] Supreme Court has commented that subjective intent by itself, "'does not make otherwise lawful conduct illegal or unconstitutional."'"  (*Id.* at p. 1306, fn. 11, quoting *Whren v. U.S., supra,* at p. 813.)

For the same reason, the trial court's comment that the evidence did not support the conclusion that Deputy Klawitter was actually going to arrest and search defendant for the traffic violation has no bearing on whether his statement that he could do so coerced defendant to consent.

11